2012 Ark. 181
**Danny Ray HENINGTON, Appellant**

v.

**STATE of Arkansas, Appellee.**

**No. CR 11–523.**

Supreme Court of Arkansas.

April 26, 2012.

Jordan B. Tinsley, Attorney at Law, Little Rock, for appellant.

Dustin McDaniel, Attorney General, Rachel Hurst Kemp, Assistant Attorney General, for appellee.

COURTNEY HUDSON GOODSON, Justice.

Appellant Danny Ray Henington appeals an order of the Benton County Circuit Court denying his petition for postconviction relief pursuant to Rule 37 of the Arkansas Rules of Criminal Procedure (2011). For reversal, appellant argues that the circuit court erred in failing to conduct an evidentiary hearing and that the circuit court's written findings constituted reversible error. We have jurisdiction pursuant to Rule 37 and Arkansas Supreme Court Rule 1–2(a)(8) (2011). We affirm.

In May 2009, appellant stood trial before a Benton County jury. K.J., appellant's six-year-old stepgranddaughter, testified that appellant reached under her clothes and touched her private area. The State introduced the victim's video-recorded interview with Karis Chastain of the Arkansas State Police Crimes Against Children Division. Chastain interviewed K.J., who described appellant "humping" her and digitally penetrating her vagina. Both appellant and his wife testified during the defense stage. Following a two-day jury trial, the jury convicted appellant of felony rape and sentenced him to thirty-six years' imprisonment in the Arkansas Department of Correction. The court of appeals affirmed his conviction and sentence in *Henington v. State,* 2010 Ark. App. 619, 378 S.W.3d 196.

Appellant timely filed a Rule 37 petition. In his petition, appellant alleged that his trial counsel, Bruce J. Bennett, failed to file a rape-shield motion and a request for an in camera hearing, pursuant to Arkansas's rape-shield statute, found at Arkansas Code Annotated section 16–42–101 (Repl.1999), and failed to investigate potential alternate sources of the victim's sexual knowledge. According to appellant, a hearing on a rape-shield motion would

have revealed prior sexual conduct between the victim, K.J., and her brother, J.J.; an explanation for what Natalie Jones, the victim's mother, described as K.J.'s "raw" genital area; a motive for K.J. and J.J. "fabricating the story about [appellant] raping K.J. and ... a reasonable explanation for" K.J.'s raw genitalia; and explanations from J.J. and a neighborhood boy about K.J.'s prior sexual knowledge. The record demonstrates that appellant requested a hearing on his petition for postconviction relief.

The State responded that appellant failed to demonstrate how this evidence would have been admissible at trial, even if he had overcome the burden of proving it admissible under our rape-shield statutory provisions. The State contended that appellant did not show prejudice in counsel's failure to request a rape-shield hearing. Further, the State asserted that appellant's allegations in his Rule 37 petition were merely conclusory statements, and as a result, no hearing was required when appellant's allegations had no merit.

Without a hearing, the circuit court denied appellant's request for postconviction relief. On January 28, 2011, the circuit court entered its order, ruling that appellant's petition contained conclusory allegations and was without merit. From this order, appellant timely brings his appeal.

On appeal, appellant argues that the circuit court erred in denying relief on his petition without holding an evidentiary hearing and in failing to make specific written findings. This court has held that it will reverse the circuit court's decision granting or denying postconviction relief only when that decision is clearly erroneous. See Williams v. State, 369 Ark. 104, 251 S.W.3d 290 (2007); Howard v. State, 367 Ark. 18, 238 S.W.3d 24 (2006). This court has stated that "[a] finding is clearly erroneous when, although there is evidence to support it, the appellate court, after reviewing the entire evidence, is left with the definite and firm conviction that a mistake has been committed." Williams, 369 Ark. at 107, 251 S.W.3d at 292 (quoting Howard, 367 Ark. at 26, 238 S.W.3d at 31).

When considering an appeal from a circuit court's denial of a Rule 37 petition, the sole question presented is whether, based on a totality of the evidence under the standard set forth by the United States Supreme Court in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the circuit court clearly erred in holding that counsel's performance was not ineffective. Anderson v. State, 2011 Ark. 488, 385 S.W.3d 783; Sparkman v. State, 373 Ark. 45, 281 S.W.3d 277 (2008). In making a determination of ineffective assistance of counsel, the totality of the evidence must be considered. Howard, supra. The benchmark for judging a claim of ineffective assistance of counsel must be "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Strickland, 466 U.S. at 686, 104 S.Ct. 2052.

Pursuant to Strickland, we assess the effectiveness of counsel under a two-prong analysis. First, a claimant must show that counsel's performance was deficient. Britt v. State, 2009 Ark. 569, 349 S.W.3d 290. Counsel is presumed effective, and allegations without factual substantiation are insufficient to overcome that presumption. Nelson v. State, 344 Ark. 407, 39 S.W.3d 791 (2001) (per curiam). A petitioner, in claiming deficiency, must show that "counsel's representation fell below an objective standard of reasonableness." Strickland, 466 U.S. at 688, 104 S.Ct. 2052. Petitioner has the burden of overcoming the presumption by identifying specific acts and omissions that, when

viewed from counsel's perspective at the time of trial, could not have been the result of reasonable professional judgment. *Wainwright v. State*, 307 Ark. 569, 823 S.W.2d 449 (1992). A court must indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Williams, supra.*

Second, a claimant must also show that this deficient performance prejudiced his defense so as to deprive him of a fair trial. *Britt, supra.* Petitioner must show that, even if counsel's conduct is shown to be professionally unreasonable, the judgment will stand unless petitioner can demonstrate that counsel's error had an actual prejudicial effect on the outcome of the proceeding. *Strickland*, 466 U.S. at 691, 104 S.Ct. 2052. Petitioner must show there is a reasonable probability that, but for counsel's errors, the fact-finder would have had a reasonable doubt respecting guilt, or in other words, that the decision reached would have been different absent the errors. *Howard, supra.* A reasonable probability is a probability sufficient to undermine confidence in the outcome of the trial. *Id.* The language, "the outcome of the trial," refers not only to the finding of guilt or innocence, but also to possible prejudice in sentencing. *Howard*, 367 Ark. at 32, 238 S.W.3d at 36. Unless a petitioner makes both showings, it cannot be said that the conviction resulted from a breakdown in the adversarial process that renders the result unreliable. *Howard, supra.* "[T]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Strickland*, 466 U.S. at 697, 104 S.Ct. 2052. With this *Strickland* standard in mind, we turn to the issues raised by appellant.

For the first point on appeal, appellant argues that the circuit court erred in summarily denying his petition without an evidentiary hearing. Specifically, appellant asserts that his Rule 37 petition alleged facts sufficient to obtain an evidentiary hearing and that those facts include allegations that his trial counsel was ineffective for failing to file a motion for an in camera hearing, pursuant to Arkansas's rape-shield statute, and for failing to investigate other sources of the victim's prior sexual knowledge. Appellant further contends that his trial counsel's deficiency prejudiced him because it left the jury with no alternate explanation of the minor victim's prior knowledge of sexual matters.

Pursuant to Arkansas Rule of Criminal Procedure 37.3(a) (2011), the circuit court has the discretion to deny relief without a hearing. We have previously interpreted Rule 37.3 to provide that an evidentiary hearing should be held in a postconviction proceeding unless the files and record of the case conclusively show that the prisoner is entitled to no relief. *Sanders v. State*, 352 Ark. 16, 98 S.W.3d 35 (2003) (holding that it is undisputed that the trial court has discretion pursuant to Rule 37.3(a) to decide whether the files or records are sufficient to sustain the court's findings without a hearing). Pursuant to Rule 37.1, a petitioner has the burden of pleading "in concise, nonrepetitive, factually specific language" at least one cause of action that is cognizable under the rule, and he must plead facts that support his claim. *See* Ark. R.Crim. P. 37.1(b); *Greene v. State*, 356 Ark. 59, 146 S.W.3d 871 (2004); *see generally Flowers v. State*, 2010 Ark. 364, 370 S.W.3d 228 (per curiam) (citing *Jamett v. State*, 2010 Ark. 28, 358 S.W.3d 874 (per curiam)). In an evidentiary hearing, the petitioner faces the burden of supporting his allegations with evidence. *See* Ark. R.Crim. P.

37.3(c); *Johnson v. State,* 2009 Ark. 541, 2009 WL 3681861; *Flaherty v. State,* 297 Ark. 198, 761 S.W.2d 167 (1988). Conclusory allegations that are unsupported by facts do not provide a basis for either an evidentiary hearing or postconviction relief. *Nance v. State,* 339 Ark. 192, 4 S.W.3d 501(1999).

In the present case, we duly note the following allegations in appellant's Rule 37 petition:

2. During the trial, the defense tried to bring out information about prior sexual conduct between the complaining witness, K.J., and her brother, J.J.; however, the court ruled that testimony inadmissible because a rape-shield motion was never filed by petitioner's counsel to ask for a rape-shield hearing and present this evidence to the court prior to trial.

3. Had petitioner's counsel filed a rape-shield motion and a hearing been held on that motion, petitioner's wife, Patti Henington, who was the biological grandmother of K.J. and J.J., would have testified that the mother of K.J. and J.J. had told her to be sure the two children were separated at night and did not sleep in the same bed, because they had been caught doing "naughty" things with each other when they lived in another state, and those naughty things included "touching each other" and "experimenting with each other" sexually. Petitioner and his wife told petitioner's trial counsel, Mr. Bennet, about these allegations and that they had heard them from K.J.'s mother, and that was why K.J. and J.J.'s older sister had to sleep in the same room with K.J. and J.J. when the children visited petitioner's home.

4. Furthermore, Pattie [sic] Henington would have testified at a rape-shield hearing that K.J.'s mother told her that a neighbor boy who lived in K.J.'s trailer park had "humped" K.J., and that K.J.'s mother had even demonstrated for Ms. Henington with a pillow that the "humping," as she called it, was sexual activity and included the neighbor boy moving up and down against K.J.'s body. Petitioner's trial counsel was likewise aware of these allegations, yet did not file a rape-shield motion or even investigate these prior allegations of sexual activity with a neighbor boy.

5. Petitioner's counsel had also been made aware by petitioner and his wife that this same neighbor boy mentioned in the previous paragraph had at one time tried to carry K.J. around the back of his trailer when K.J. was three or four years old (she was approximately four or five years old at the time of the allegation against petitioner), and petitioner had seen that and made the neighbor boy drop K.J. and prevented her from coming to harm.

6. All of these allegations were possible explanations as to how the child had knowledge of sexual matters and therefore were relevant and necessary to petitioner's defense in this case.

7. When the allegations against petitioner first arose, both K.J. and J.J. made the allegations against petitioner, although J.J. did not testify at trial. Considering the statements by the mother of the previous sexual behavior of K.J. and J.J. together, this information could have given the jury a motive for K.J. and J.J. fabricating the story about petitioner raping K.J., and could have given a reasonable explanation for why K.J.'s genital area was "raw," as was described by her mother in her testimony. This is because K.J. and J.J. had been sleeping at petitioner's home, in the same room, and the allegations against petitioner were made when they

went back home and K.J.'s mother discovered K.J.'s genital area was "raw."

8. K.J. was the *only* witness to testify about the actual allegations against petitioner; there were no other witnesses presented that claimed to have seen petitioner raping K.J., and there was no medical evidence whatsoever to back up K.J.'s story that she had been raped by petitioner. Since K.J. was the sole witness, her credibility was crucial to the State's case, and impeaching her credibility was necessary to petitioner's defense.

9. Considering that this "rape shield" evidence would have given (1) another explanation of the child's "raw" genital area, and (2) a motive for K.J. and J.J. to lie about how K.J.'s genital area became raw, and (3) two other explanations (via J.J. and the neighbor boy) of how K.J. came to know about sexual matters, to fail to file a rape-shield motion so these matters could be brought out at trial was deficient performance by Bruce Bennett, petitioner's trial counsel. Moreover, this failure to present this testimony prejudiced petitioner because the jury was given no other explanation for how K.J. knew what she knew or how she could have been injured, so they were left with only K.J.'s testimony about the incident.

Here, the record reveals that appellant is not entitled to postconviction relief and that a hearing was not warranted. Bennett, appellant's trial counsel, did attempt to develop this particular evidence at trial. The record reflects that Bennett attempted to elicit testimony from appellant's wife, the victim's grandmother, that the victim's mother instructed her to prevent K.J. and J.J. from sleeping in the same room. Further, an excerpt of the trial transcript demonstrates that appel-

lant received a ruling from the circuit court limiting the scope of this testimony. During a bench conference at trial, the following colloquy occurred:

MR. BENNETT: The idea and the only response she [the victim's grandmother and appellant's wife] will give to this question is that she had instructed my client not to let [J.J. and K.J.] sleep together because they were doing naughty things. That's it. That is all she'd testified.

MR. CEARLEY [prosecutor]: You're—absolutely cannot go there. That's covered under rape shield.

MR. BENNETT: Well, Your Honor, that came up during the mother's testimony.

THE COURT: All right.

MR. BENNETT: Well, I can still file a written [rape-shield] motion anytime before I close my case.

THE COURT: Listen, I'll let you make your record. I will let you ask her if she was instructed by the—Natalie not to have them sleeping together. That's as far as I'll let you go. It's a rape shield violation.

MR. CEARLEY: I want to make sure that you are going to ask it's a yes or no answer.

MR. BENNETT: I'll lead her right to that. I won't ask why.

THE COURT: All right.

The circuit court ruled this evidence as inadmissible under the rape-shield statute. Bennett responded, "[S]hould I want to go there, I think I prepared a written motion to that effect, so, I mean, I'll make that determination before my case in chief is closed." Based on this colloquy, we conclude that Bennett understood that he could file a rape-shield motion before the defense rested, but he elected not to do so. Where a decision by counsel was a matter of trial tactics or strategy, and that deci-

sion is supported by reasonable professional judgment, then counsel's decision is not a basis for relief under Rule 37.1. *Sykes v. State*, 2011 Ark. 412, 2011 WL 4635021 (per curiam). Moreover, with regard to appellant's allegations that the victim had prior sexual knowledge, particularly her knowledge of the term "humping," Bennett developed this evidence at trial during the cross-examination of the victim's mother and during the direct examination of the victim's grandmother. Thus, we conclude that the record demonstrates that Bennett did not perform deficiently. Absent a showing of Bennett's deficient performance, we decline to address the prejudice component when appellant made "an insufficient showing on one." *Strickland*, 466 U.S. at 697, 104 S.Ct. 2052. Therefore, we hold that the circuit court did not err in denying an evidentiary hearing on appellant's Rule 37 claims.

For his second point on appeal, appellant argues that the circuit court erred in failing to make sufficient written findings in its order. Specifically, appellant contends that the circuit court's order did not specify the portions of the record that the court relied on in denying his Rule 37 hearing as required by Arkansas Rule of Criminal Procedure 37.3(a) (2011).

When a petition for postconviction relief is denied without a hearing, Rule 37.3(a) requires that the circuit court "shall make written findings to that effect, specifying any part of the files, or records that are relied upon to sustain the court's findings." *Wooten v. State*, 338 Ark. 691, 1 S.W.3d 8 (1999). Without such specific findings, there can be no meaningful review because, on review, this court determines whether the findings are supported by a preponderance of evidence. *Reed v. State*, 375 Ark. 277, 289 S.W.3d 921 (2008). If the trial court fails to make such findings, it is reversible error, except in

cases where it can be determined from the record that the petition is wholly without merit or where the allegations in the petition are such that it is conclusive on the face of the petition that no relief is warranted. *See Rodriguez v. State*, 2010 Ark. 78, 2010 WL 569750; *see also Sanders v. State*, 352 Ark. 16, 98 S.W.3d 35 (2003).

In the present case, the circuit court's order denying appellant's Rule 37 petition provides as follows:

5. Petitioner alleged ineffective assistance of counsel because [trial counsel] failed to request a rape-shield hearing to suggest third-party culpability and an alternative basis for knowledge of sexual matters.

6. Petitioner did not state a claim upon which relief can be granted.

7. Petitioner did not show prejudice in counsel failing to request a rape-shield hearing. A claim that prejudice was suffered without any factual explanation about what form the prejudice took or how serious it was is not enough to prove ineffective assistance of counsel. *Spivey v. State*, 299 Ark. 412, 417, 773 S.W.2d 446, 449 (1989).

8. Petitioner's allegation is a conclusory statement. Petitioner does not state how any of the desired evidence would have been admissible.

9. Allegations without factual substantiation are insufficient to overcome the presumption that counsel was effective. Conclusory statements cannot be the basis of postconviction relief. *Jackson v. State*, 352 Ark. 359, 371, 105 S.W.3d 352, 360 (2003); *Nance v. State*, 339 Ark. 192, 4 S.W.3d 501 (1999); *Bryant v. State*, 323 Ark. 130, 132, 913 S.W.2d 257, 258 (1996).

10. Petitioner's petition and the file conclusively show that petitioner is not entitled to relief because petitioner's al-

legations are entirely conclusory in nature and/or have no merit.

11. The court denies petitioner's petition without a hearing.

Here, the circuit court's findings are sufficient to specify the basis for its ruling. Appellant himself submitted a portion of the record with his Rule 37 petition, specifically pages 419 through 423 of the record. Further, in its order, the circuit court stated that it reviewed the pleadings and transcripts in denying appellant's petition for postconviction relief. In doing so, the circuit court outlined appellant's claims and the reasons for its denial of those claims. Thus, we conclude that the circuit court's written findings complied with Rule 37.3. Accordingly, we affirm the circuit court's denial of appellant's request for postconviction relief.

Affirmed.

DANIELSON, J., concurs.

Paul E. DANIELSON, Justice, concurring.

I agree that the circuit court should be affirmed; however, because I reach my conclusion on the first point differently, I concur.

It is my opinion that Bennett indeed should have filed a motion requesting an in camera hearing pursuant to Arkansas's rape-shield statute. That being said, under *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), a claimant must show that their defense was prejudiced so as to deprive them of a fair trial. Henington failed to do so here.

The burden is entirely on the petitioner in a Rule 37.1 proceeding to provide facts that affirmatively support the claims of prejudice. *See Payton v. State,* 2011 Ark. 217, 2011 WL 1805340 (per curiam). However, in Henington's petition, he failed to provide an evidentiary basis for the admissibility of the proposed evidence, particularly considering the rape-shield statute or potential hearsay objections. Therefore, Henington failed to establish that, had counsel requested a hearing, his arguments for admission of the evidence would have been effective. *See, e.g., Bell v. State,* 2010 Ark. 65, 360 S.W.3d 98. For this reason, I concur that the circuit court's order denying Henington's petition for postconviction relief pursuant to Rule 37 should be affirmed.