

Cite as 2014 Ark. 448

# SUPREME COURT OF ARKANSAS

No. CR-13-1112

|  |  |  |
|---|---|---|
| | | **Opinion Delivered** October 30, 2014 |
| RODNEY L. JONES | APPELLANT | PRO SE APPEAL FROM THE VAN BUREN COUNTY CIRCUIT COURT |
| V. | | [NO. 71CR-08-132] |
| STATE OF ARKANSAS | APPELLEE | HONORABLE CHARLES E. CLAWSON, JR., JUDGE |
| | | AFFIRMED. |

**PER CURIAM**

In 2008, appellant Rodney L. Jones was charged with capital murder in the shooting death of his former wife, Orzona Fischer, for which the State sought the death penalty. He was tried by a jury in 2010 and sentenced to life imprisonment without parole. We affirmed. *Jones v. State*, 2012 Ark. 38, 388 S.W.3d 411.

At trial, appellant raised the affirmative defense of not guilty by reason of mental disease or defect, arguing that his use of prescription drugs and the stress that he had been experiencing induced him to commit the murder. There was evidence adduced at trial that appellant traveled from Colorado to Clinton, Arkansas, where he used a rifle to shoot Ms. Fischer through the front window of her house. He then returned to Colorado, disposing of the rifle in a river in Kansas. Appellant later confessed to authorities, and the rifle was recovered. A witness for the State testified that, months before appellant left Colorado, appellant had tried to convince the witness on multiple occasions to provide him with an alibi for when he traveled to Arkansas to

SLIP OPINION

plant drugs on the victim's land or to otherwise harm her. On cross-examination, the defense elicited testimony from the witness that the medication appellant was taking changed his behavior, making him agitated.

After the judgment was affirmed on appeal, appellant timely filed in the trial court a verified, pro se petition for postconviction relief pursuant to Arkansas Rule of Criminal Procedure 37.1 (2010). With leave of the trial court, he was allowed to amend the petition. An evidentiary hearing was held, and the relief sought was denied. Appellant brings this appeal.

In his petition, appellant alleged that he was not afforded effective assistance of counsel at trial. This court has held that it will reverse the trial court's decision granting or denying postconviction relief only when that decision is clearly erroneous. *Conley v. State*, 2014 Ark. 173, 433 S.W.3d 234. A finding is clearly erroneous when, although there is evidence to support it, the appellate court, after reviewing the entire evidence, is left with the definite and firm conviction that a mistake has been committed. *Caery v. State*, 2014 Ark. 247 (per curiam); *Sartin v. State*, 2012 Ark. 155, 400 S.W.3d 694.

When considering an appeal from a trial court's denial of a Rule 37.1 petition based on ineffective assistance of counsel, the sole question presented is whether, based on a totality of the evidence under the standard set forth by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984), the trial court clearly erred in holding that counsel's performance was not ineffective. *Taylor v. State*, 2013 Ark. 146, 427 S.W.3d 29.

The benchmark for judging a claim of ineffective assistance of counsel must be "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial

SLIP OPINION

cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686. Pursuant to *Strickland*, we assess the effectiveness of counsel under a two-prong standard. First, a petitioner raising a claim of ineffective assistance must show that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the petitioner by the Sixth Amendment to the United States Constitution. *Caery*, 2014 Ark. 247; *Williams v. State*, 369 Ark. 104, 251 S.W.3d 290 (2007). There is a strong presumption that trial counsel's conduct falls within the wide range of professional assistance, and an appellant has the burden of overcoming this presumption by identifying specific acts or omissions of trial counsel, which, when viewed from counsel's perspective at the time of the trial, could not have been the result of reasonable professional judgment. *Henington v. State*, 2012 Ark. 181, 403 S.W.3d 55; *McCraney v. State*, 2010 Ark. 96, 360 S.W.3d 144 (per curiam). Second, the petitioner must show that counsel's deficient performance so prejudiced petitioner's defense that he was deprived of a fair trial. *Holloway v. State*, 2013 Ark. 140, 426 S.W.3d 462. A petitioner making an ineffective-assistance-of-counsel claim must show that his counsel's performance fell below an objective standard of reasonableness. *Abernathy v. State*, 2012 Ark. 59, 386 S.W.3d 477 (per curiam). The petitioner must show that there is a reasonable probability that, but for counsel's errors, the fact-finder would have had a reasonable doubt respecting guilt, i.e., the decision reached would have been different absent the errors. *Breeden v. State*, 2014 Ark. 159, 432 S.W.3d 618 (per curiam). A reasonable probability is a probability sufficient to undermine confidence in the outcome of the trial. *Id.* The language, "the outcome of the trial," refers not only to the finding of guilt or innocence, but also to possible prejudice in sentencing. *Id.* Unless a petitioner makes both

showings, it cannot be said that the conviction resulted from a breakdown in the adversarial process that renders the result unreliable. *Id.* "[T]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Strickland*, 466 U.S. at 697.

In his brief, appellant initially argues that his attorney was ineffective because he failed to investigate the full extent of the effect that the drugs he had been prescribed could have on human behavior.[1] He focuses particularly on Chantix and Cymbalta, two drugs with a "black box" warning of documented history of causing psychotic behavior in some patients, but he also contends that the other drugs he was taking had adverse psychological effects as well. He asserts that counsel should have looked beyond the warning label on the drugs to find evidence to establish that the drugs, and consuming the drugs in combination, were capable of producing psychosis.

At the evidentiary hearing, counsel testified that the effect of the drugs on appellant formed the "cornerstone" of the defense. Expert testimony was presented by defense witness

[1]The State notes in its brief that appellant in his brief has expanded the allegations raised in the Rule 37.1 petition and discussed at the evidentiary hearing by offering an anecdotal account of persons reported to have had suffered a psychotic episode while taking Chantix, one of the drugs he contends was responsible for his altered state of mind leading to the murder. While appellant argued at length in his Rule 37.1 petition that Chantix and other drugs could induce psychosis and gave examples of such occurrences, on appeal, he is limited to the specific arguments that he made below that were considered by the trial court in rendering its ruling. *Thornton v. State*, 2014 Ark. 113 (per curiam). To the extent that any of the information offered in the brief was not before the trial court when it considered the petition, we will not consider new information or new arguments added to bolster the allegations made below. *Id.*; *see also Bryant v. State*, 2013 Ark. 305, 429 S.W.3d 193 (per curiam); *Hogan v. State*, 2013 Ark. 223 (per curiam). Likewise, issues raised below but not argued on appeal are considered abandoned. *Springs v. State*, 2012 Ark. 87, 387 S.W.3d 143.

Dr. Bob Gale, a forensic psychiatrist and neurologist, that appellant was suffering from depression and fibromyalgia and that the drugs in question could produce psychosis. It was Dr. Gale's conclusion that appellant had experienced a "brief psychotic disorder," which Dr. Gale testified constituted a mental disorder and a mental defect. Dr. Gale further testified that he had reviewed the police and investigative reports, witness statements, appellant's medical records, and the record of his prescription drugs. Dr. Gale also consulted with a doctor of pharmacy concerning the effects of appellant's prescriptions, both individually and in combination, on a person like appellant who was experiencing depression and fibromyalgia. It was Dr. Gale's opinion that appellant was unable, due to his delusional state, to conform his conduct to the requirements of the law. Dr. Gale testified at length as to the information on which he based his conclusion, including testimony on the stressors in appellant's life, appellant's chronic pain and depression, the neurological effect on the brain of the drugs appellant was taking, and the medical evidence that demonstrated the dangers of the drugs.[2]

Another expert, who also evaluated appellant, testified that appellant suffered from depression but had the capacity to form the culpable mental state necessary to commit the offense charged and to engage in purposeful behavior. The expert concluded that appellant did not suffer from a mental disease or defect.

It was for the jury to assess the credibility of the expert witnesses and decide whom to

---

[2]Counsel testified that he also engaged a second expert, a psychologist, to perform an evaluation on appellant but that person did not agree with the defense's position and was not called to testify.

SLIP OPINION

believe. *See Green v. State*, 2013 Ark. 497, 430 S.W.3d 729 (citing *Tryon v. State,* 371 Ark. 25, 263 S.W.3d 475 (2007)). The jury determines, not merely the credibility of witnesses, but the weight and value of their testimony. *Jordan v. State*, 2013 Ark. 469 (per curiam) (citing *Nelson v. State*, 344 Ark. 407, 39 S.W.3d 791 (2001) (per curiam)). The jury may resolve questions of conflicting testimony and inconsistent evidence and may choose to believe the State's account of the facts rather than the defendant's. *Tryon*, 371 Ark. 25, 263 S.W.3d 475.

Beyond pointing to copious examples of the adverse effects of the drugs on other people and asserting that counsel should have done more testing to determine the severity of his mental problems, appellant did not show that there was some specific information that further investigation into the drugs or testing could have revealed that could have been applied to the facts of his case. To warrant postconviction relief on the ground that counsel was ineffective for failure to perform adequate investigation, a petitioner must delineate the actual prejudice that arose from the failure to investigate and demonstrate a reasonable probability that the specific information that would have been uncovered with further investigation could have changed the trial outcome. *Green v. State*, 2014 Ark. 284 (per curiam); *Bryant*, 2013 Ark. 305, 429 S.W.3d 193. This court has held that general assertions, unsupported with facts, that counsel did not prepare for trial aggressively enough, do not provide a basis for a finding of ineffective assistance of counsel. *Chunestudy v. State*, 2014 Ark. 345, 438 S.W.3d 923 (per curiam) (citing *Polivka v. State*, 2010 Ark. 152, 362 S.W.3d 918). The burden is entirely on the claimant to provide facts that affirmatively support his or her claims of prejudice; neither conclusory statements nor allegations without factual substantiation are sufficient to overcome the presumption that counsel was

6

effective, and such statements and allegations will not warrant granting a Rule 37.1 petition. *Rowan v. State*, 2014 Ark. 353, 438 S.W.3d 918 (per curiam).

The trial court found that counsel had provided the jury with sufficient information to make a decision on whether appellant suffered from a mental disease or defect and that counsel's representation was within the range of reasonable professional judgment required of a defense attorney in a criminal proceeding. Appellant has not established that the trial court's decision was clearly erroneous.

Appellant next argues that an attorney should have been appointed to represent him at the evidentiary hearing.[3] We have held that, in order to demonstrate an abuse of discretion by the trial court in declining to appoint counsel, appellant must make some substantial showing in his request for counsel that his petition included a meritorious claim. *Chunestudy*, 2014 Ark. 345, 438 S.W.3d 923 (citing *Ellis v. State*, 2014 Ark. 24 (per curiam)); *see also Viveros v. State,* 372 Ark. 463, 277 S.W.3d 223 (2008) (per curiam). A review of the Rule 37.1 petition demonstrates that appellant did not make that showing. The claims raised by appellant were largely devoid of the factual support required for the trial court to find that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the petitioner by the Sixth Amendment. While appellant contends that he was a person in "special need" of counsel, he does not argue in his brief that there was any specific issue that he was unable to raise to the court without the assistance of an attorney.

Appellant also cites *Martinez v. Ryan*, ___ U.S. ___, 132 S. Ct. 1309 (2012) as authority

---

[3]The trial court initially appointed counsel for appellant but ultimately rescinded the order.



for his contention that counsel should have been appointed. Appellant's reliance on *Martinez* is misplaced. The *Martinez* Court held that, when state law requires a prisoner to use a collateral attack rather than a direct appeal to raise a claim that his trial attorney was not effective under the Sixth Amendment, the prisoner's failure to comply with state rules in bringing his collateral attack on the judgment will no longer bar a federal judge from granting habeas relief on that claim, if the prisoner had no attorney to represent him in the collateral proceeding or that attorney was ineffective and if the petition filed in the state court had a meritorious claim. In *Trevino v. Thaler*, ___ U.S. ___, 133 S. Ct. 1911 (2013), the Court extended its holding in *Martinez* to cases in which a state's procedural framework make it unlikely in a typical case that a defendant would have a meaningful opportunity to raise a claim of ineffective assistance of trial counsel on direct appeal. *Trevino* clarified aspects of *Martinez,* but it did not require states to provide counsel to every petitioner in a collateral attack on a judgment. Accordingly, neither the ruling in *Martinez* nor the ruling in *Trevino* dictated that the trial court was required to appoint counsel for appellant. *See Chunestudy*, 2014 Ark. 345, 438 S.W.3d 923. Postconviction matters, such as Rule 37.1 petitions, are considered civil in nature, and there is no absolute right to appointment of counsel. *Walton v. State*, 2012 Ark. 269 (per curiam) (citing *Noble v. State*, 2011 Ark. 200 (per curiam)). Nevertheless, if a petitioner makes a substantial showing that he is entitled to relief in a postconviction appeal and that he cannot proceed without counsel, we have held that the petitioner is entitled to have counsel appointed to represent him in a postconviction proceeding. *See Walton*, 2012 Ark. 269. Appellant here did not make a substantial showing in his request for counsel that his petition included a meritorious claim; accordingly,



the trial court did not err in declining to appoint counsel for the hearing. *See id.*

In his third claim, appellant asserts that the trial court erred in denying his request for a copy of the transcript of his trial. The record reflects that the trial court at a preliminary hearing elected to stay its decision on the motion for transcript until an attorney was appointed for appellant. On May 30, 2013, the court declined to appoint counsel, informing appellant that he would be required to retain counsel and resetting the date for the evidentiary hearing to August 8, 2013. At the August 8, 2013 hearing, appellant did not raise the issue of whether he was entitled to a copy of the trial transcript and, thus, the trial court did not rule on the request. As appellant did not obtain a ruling on his motion, the failure to obtain a ruling below bars a review of the issue on appeal. *Rainer v. State*, 2014 Ark. 306, ___ S.W.3d ___.

As his final issue on appeal, appellant argues that his attorney was ineffective for advising him against accepting an offer of a plea bargain by which he would have entered a plea of guilty and been sentenced to forty years' imprisonment. Appellant conceded at the Rule 37.1 hearing that he made the decision to forgo the plea offer, but he contends that he would have accepted the plea had counsel not "all but guaranteed" him that counsel could bring in a verdict of guilty to a lesser offense than capital murder. At the hearing, counsel testified that he made a special trip to see appellant to discuss the offer and that he did not advise against accepting the plea because the State was seeking the death penalty. Counsel further testified that it was his practice to advise defendants accused of capital murder to accept an offer of a plea that would avoid the death penalty and that, while he may have discussed lesser-included offenses with appellant, he did not guarantee appellant that he could achieve a verdict of less than capital murder if

9

appellant went to trial. Counsel also recalled that appellant had given him the understanding that he would not accept a plea of more than thirty years' imprisonment because he was going to die in prison anyway if he received a greater sentence.

In addition to appellant's testimony that he would have accepted the plea if counsel had not told him that he would be convicted of first-degree or possibly second-degree murder, appellant produced an affidavit from his mother in which she averred that counsel had advised her son not to take the forty-year plea because counsel could "beat the capital charge and get it to a lesser charge, maybe as low as second degree."

In rendering its decision declining to grant relief on the allegation concerning the plea offer, the trial court was not required to accept appellant's allegation or the affidavit as truthful. When there is conflict that presents an issue of credibility, it is trial court's task as trier of fact to resolve it, and the court is free to believe all or part of any witness's testimony. *Hoyle v. State*, 2011 Ark. 321, 388 S.W.3d 901 (per curiam). This applies especially to the testimony of the petitioner in a Rule 37.1 proceeding, as the petitioner has the most interest in the outcome of the proceeding. *Heard v. State*, 2012 Ark. 67 (per curiam). Here, the trial court found counsel's testimony concerning the plea offer more credible. This court does not assess the credibility of witnesses on appeal, and we will not overturn the decision of the trial court in this matter as it was based on an assessment of credibility by the trier of fact. *See Hoyle*, 2011 Ark. 321, 388 S.W.3d 901; *see also Loggins v. State*, 2010 Ark. 414, 372 S.W.3d 785.

After a review of the record and appellant's arguments, we find that the claims raised by appellant were largely devoid of the factual support required for the trial court to find that

10

counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the petitioner by the Sixth Amendment. When there is insufficient factual support for an allegation to demonstrate a specific failure on the part of counsel, there is no showing of ineffective assistance of counsel under the *Strickland* standard. *Caery*, 2014 Ark. 247. Appellant did not show that there is a reasonable probability that, but for counsel's errors, the fact-finder would have had a reasonable doubt respecting guilt, i.e., the decision reached would have been different absent the errors. For that reason, we cannot say that the trial court erred in denying relief under Rule 37.1.

Affirmed.

*Rodney L. Jones*, pro se appellant.

*Dustin McDaniel*, Att'y Gen., by: *Kent G. Holt*, Ass't Att'y Gen., for appellee.