
# ARKANSAS COURT OF APPEALS

DIVISION II
No. CR-14-1066

|  |  |  |
|---|---|---|
| MARK AARON LUPER | | Opinion Delivered September 2, 2015 |
| APPELLANT | | APPEAL FROM THE BENTON COUNTY CIRCUIT COURT [No. CR-2012-761-1] |
| V. | | |
| | | HONORABLE ROBIN F. GREEN, JUDGE |
| STATE OF ARKANSAS | | |
| APPELLEE | | AFFIRMED |

## LARRY D. VAUGHT, Judge

Mark Aaron Luper appeals his conviction by a Benton County jury of the rape of his former stepdaughter, S.H. His only arguments on appeal relate to the testimony of two of his former stepdaughters, Sydney and Shanna Chopper. The Chopper girls both testified that, while he was married to their mother, he molested them. He argues that the evidence, which was admitted under the pedophile exception to Rule 404(b) of the Arkansas Rules of Evidence, should have been excluded because he was never charged with any crime related to the Chopper girls' allegations. Alternatively, he argues that he should have been allowed to call a former sheriff's investigator to testify as to why charges were never filed. We affirm.

S.H. testified that when Luper moved in with her mother, Robin Luper, S.H. was approximately eight years old. She testified that Luper had always been inappropriately sexual with her, in a way that made her uncomfortable. She would awaken in the morning with him sitting on her bed looking at her, which progressed to him waking her by putting

his hand on her waist, hips, thighs, or buttocks. She said that he would touch or grab her inappropriately during horseplay. S.H. and her mother both testified that Luper treated S.H. differently than he treated her siblings and half siblings, favoring her and spoiling her with gifts. She testified that the behavior escalated into sexual abuse when she was in ninth grade. Although she shared a room with her sister, H.H., she was often alone in the mornings because her sister left for school earlier than she did. During this time, S.H. woke up one morning to discover that Luper was sitting beside her on her bed and had inserted his finger into her vagina. She testified that it hurt and that she rolled over and away from Luper, who then stopped and told her to get ready for school. After that initial incident, Luper began waking her up in this manner at least once per week for approximately the next two years.

S.H. testified that late on the evening of June 11, 2012 (or very early in the morning on June 12), she had fallen asleep on the couch while she and Luper watched a movie. She testified that she awoke with intense pain in her vagina and abdomen. She felt Luper's hand on the inside of her leg and testified that her inner thigh was wet. She testified that Luper was close to her, with one knee propped on the couch, and he was "fixing his shorts." Although she initially disclosed to her mother and investigators that Luper had inserted his finger into her vagina that night, she later revealed (and testified) that she believed he had actually inserted his penis. She said that pain was similar to the pain she had experienced in the past when he digitally penetrated her but more severe, indicating a larger object.

Other evidence against Luper included findings that S.H.'s sleeping shorts, the underwear she was wearing that night, and the underwear that she was wearing the next day were all positive for seminal fluid (both pairs of underwear revealed sperm cells in the inner

crotch area, while the shorts revealed semen on the thigh). DNA evidence revealed that Luper was a major DNA contributor to the sperm cells found in her underwear and the semen found on her shorts. Although sperm cells were also found on the vaginal swabs taken during physical examination conducted after she reported the abuse, the DNA testing of the vaginal swabs only revealed S.H.'s own DNA. S.H.'s younger sister, H.H., testified that Luper had inappropriately grabbed and squeezed her breasts on more than one occasion. S.H.'s mother testified that, when she confronted Luper about the allegations, he reacted in a manner she thought was uncharacteristic for him, crying and curling up in the fetal position.

The State also called Luper's former stepdaughters, Sydney and Shanna Chopper, as witnesses. The girls testified that Luper had molested them in a similar manner: by touching them inappropriately and digitally penetrating their vaginas with his fingers. The girls testified that they had disclosed the abuse years earlier, that it had been investigated, and that no charges were filed. They testified that, at the time, they had also told investigators that the digital penetration might have been accidental, but that they now believed it was not. The circuit court admitted the Chopper girls' testimony over Luper's objection because it deemed it to be proper under the pedophile exception to Rule 404(b) of the Arkansas Rules of Evidence. In response, Luper argued (in a motion in limine and at trial) that he should be allowed to call a former sheriff's investigator who worked on the case regarding the Chopper girls' allegations. He stated that the investigator would have testified that the prosecuting attorney's office declined to prosecute the case because the girls had admitted that Luper's

alleged conduct may not have been purposeful. The State objected, and the court denied his request to call the investigator.

In *Brown v. State*, the Arkansas Supreme Court explained the appropriate standard of review in addressing a circuit court's decision as to the admissibility of evidence under Rule 404(b):

> The admission or rejection of evidence under Rule 404(b) is within the sound discretion of the circuit court, and it will not be reversed absent a manifest abuse of discretion. *E.g.*, *Strong v. State*, 372 Ark. 404, 277 S.W.3d 159 (2008). According to Rule 404(b), "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith." Such evidence is permissible for other purposes, "such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Ark. R. Evid. 404(b). This court's precedent has recognized a "pedophile exception" to this rule, whereby evidence of similar acts with the same or other children is allowed to show a proclivity for a specific act with a person or class of persons with whom the defendant has an intimate relationship. *E.g.*, *Flanery v. State*, 362 Ark. 311, 208 S.W.3d 187 (2005). For the pedophile exception to apply, we require that there be a sufficient degree of similarity between the evidence to be introduced and the sexual conduct of the defendant. *E.g.*, *White v. State*, 367 Ark. 595, 242 S.W.3d 240 (2006). There must also be an "intimate relationship" between the perpetrator and the victim of the prior act. *Id.*

2012 Ark. 399, at 7, 424 S.W.3d at 293 *(*quoting *Hendrix v. State*, 2011 Ark. 122, at 7–8). The rationale for the pedophile exception is that such evidence helps to prove the depraved sexual instinct of the accused. *Flanery v. State*, 362 Ark. 311, 208 S.W.3d 187 (2005); *Greenlee v. State*, 318 Ark. 191, 884 S.W.2d 947 (1994).

Luper argues that the court improperly admitted the testimony of Shanna and Sydney Chopper under the pedophile exception to Rule 404(b) because he was never charged with any crimes related to their allegations. However, there is no requirement that evidence admitted under the pedophile exception be based upon a criminal charge or conviction. In fact, the Arkansas Supreme Court has stated that the pedophile exception does not require

that the prior act be charged or substantiated. *Allen v. State*, 374 Ark. 309, 315–17, 287 S.W.3d 579, 583–85 (2008). The pedophile exception makes no distinction between substantiated and unsubstantiated allegations. *Id.*, 287 S.W.3d at 585. In this case, the fact that no charges were ever filed was disclosed to the jury, as was the fact that the girls told investigators that the conduct may have been accidental. The jury was free to give that evidence the weight and credibility it deemed appropriate.

Alternatively, Luper argues that he should have been allowed to call C.G. Hines, formerly a sheriff's office investigator assigned to the Chopper girls' case, to testify as to why charges were never filed. Luper provided a proffer of what he believed Hines's testimony would include: the Chopper girls' allegations, the fact that Luper denied them, the fact that the girls told investigators that the conduct may have been accidental, and the fact that the deputy prosecuting attorney declined to prosecute the case based upon the girls' statements that the conduct may have been accidental.

In a motion in limine, the State objected to the testimony, stating that it would be an improper comment on the evidence, which would allow a third-party opinion to serve as an attack on the credibility of the 404(b) evidence. Luper responded, arguing that the evidence should be admitted under a hearsay exception. He argued that the evidence was not hearsay because it was intended to show the basis for the investigator's actions rather than for the truth of the matter asserted. The court ruled that the Chopper girls' testimony was admissible and reserved ruling on the admissibility of Hines's testimony. At trial, the court

5

ruled that Luper would be allowed to elicit testimony from other witnesses about whether charges were ever filed but that he would not be allowed to call Hines.[1]

Luper argues on appeal that his ability to present his defense was severely prejudiced because he was not allowed to rebut the Chopper girls' allegations by demonstrating that they had previously been rejected by the State. However, the court's ruling only prevented Luper from calling Hines for that purpose; Luper was still able to introduce testimony from multiple other sources that the Chopper girls told investigators that the conduct may have been accidental and that the State had declined to prosecute. Moreover, Hines was not the deputy prosecuting attorney who made the decision not to pursue the case. Based on Luper's proffer, Hines would not have been able to provide any additional insight or first-hand knowledge as to why charges were never brought.

The testimony was properly excluded as hearsay. Luper's argument that he was not introducing Hines's testimony for the truth of the matter asserted but only to give background and explanation for Hines's investigation is unavailing. Hines's investigation of the Chopper girls' allegations was never at issue in this case. There was no need to explain each step of the Chopper investigation. Even if Hines's investigation was at issue, the deputy prosecutor's decision not to pursue charges occurred after the investigation and therefore is not relevant to explaining Hines's previous investigative steps. Moreover, Luper's appellate arguments clearly demonstrate the true purpose for which the testimony was to be

---

[1] The court stated that "I do believe it's proper for cross-examination purposes to ask if charges were filed, if Mr. Luper was arrested as a result of their accusations, but that's the extent that I'm going to allow it." On appeal, the State argues that Luper never obtained a ruling on the admissibility of Hines's testimony, therefore failing to preserve the issue for appeal. We disagree. The court excluded Hines's testimony.

introduced: to discredit the Chopper girls' credibility by showing that the State had rejected their allegations and chosen not to prosecute their case.[2] Therefore, had the investigator testified as to what the deputy prosecutor told him about why the State was not pursuing the case, it would have been hearsay introduced for the truth of the matter asserted. Additionally, the testimony would have been redundant, as other witnesses also testified that the prosecutor declined to bring charges after the girls admitted that Luper's conduct may have been accidental. Finally, to the extent that Hines would have commented on the Chopper girls' credibility or truthfulness, the testimony was inadmissible. *Montgomery v. State*, 2014 Ark. 122, at 5–6.

Affirmed.

WHITEAKER and HIXSON, JJ., agree.

*Jeff Rosenzweig*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Christian Harris*, Ass't Att'y Gen., for appellee.

---

[2] Luper argues in his brief that the opinion of the prosecuting attorney that the accusations were not believable should provide a constitutional exception to the general prohibition on such opinion testimony.