

Cite as 2016 Ark. 371

# SUPREME COURT OF ARKANSAS

**No.** CR–16–244

| | | |
|---|---|---|
| MARK AARON LUPER | | **Opinion Delivered:** November 3, 2016 |
| | APPELLANT | |
| V. | | APPEAL FROM THE BENTON COUNTY CIRCUIT COURT [NO. 04-CR-761] |
| STATE OF ARKANSAS | | |
| | APPELLEE | HONORABLE ROBIN F. GREEN, JUDGE |
| | | AFFIRMED. |

**HOWARD W. BRILL, Chief Justice**

Appellant Mark Aaron Luper appeals the order denying his petition for postconviction relief. Luper was convicted by a Benton County jury of the rape of his former stepdaughter, S.H., and sentenced to twenty-three years' imprisonment in the Arkansas Department of Correction. Luper appealed, and the court of appeals affirmed. *See Luper v. State*, 2015 Ark. App. 440, 468 S.W.3d 289.[1] Thereafter, Luper filed a petition for

---

[1] The underlying facts leading to Luper's conviction were set forth in detail in *Luper*, 2015 Ark. App. 440, 468 S.W.3d 289. Briefly, S.H. testified that late on the evening of June 11, 2012, or early in the morning on June 12, she had fallen asleep on the couch while she and Luper watched a movie. She stated that she awoke with an intense pain in her vagina and abdomen, that she felt Luper's hand on the inside of her leg, and that her inner thigh was wet. Although she had initially told her mother and investigators that Luper had inserted his finger into her vagina that night, she later revealed and testified that she believed he had actually inserted his penis. Seminal fluid was found on S.H.'s sleeping shorts, the underwear she was wearing that night, and the underwear she was wearing the next day. Sperm cells were found on the inner crotch area of both pairs of underwear, and semen was found on the thigh area of the shorts. Testing revealed that Luper was a major DNA contributor to the sperm cells and the semen.

postconviction relief pursuant to Arkansas Rule of Civil Procedure 37.1, in which he asserted eleven claims of ineffective assistance of trial counsel. The circuit court denied the petition without a hearing. For reversal, Luper contends that he was entitled to an evidentiary hearing on five of the claims in his petition.[2] Luper asserts that trial counsel was ineffective (1) for failing to call a witness to corroborate his defense that the "false" allegation of rape was a means for Robin Luper,[3] the victim's mother, to obtain leverage in her divorce action against him, (2) for not adequately exploring Robin's "financial demands and obligations," (3) for failing to show the jury videos depicting S.H. and him at Walmart the day after the rape, (4) for failing to obtain S.H.'s phone records, and (5) for failing to dispute S.H.'s claim that her sister, H.H., had never attended car shows with him. We affirm the circuit court's order.

This court does not reverse a denial of postconviction relief unless the circuit court's findings are clearly erroneous. *E.g.*, *Turner v. State*, 2016 Ark. 96, 486 S.W.3d 757. A finding is clearly erroneous when, although there is evidence to support it, after reviewing the entire evidence, we are left with the definite and firm conviction that a mistake has been committed. *Id.*, 486 S.W.3d 757. In making a determination on a claim of ineffective assistance of counsel, this court considers the totality of the evidence. *E.g.*, *State v. Harrison*, 2012 Ark. 198, 404 S.W.3d 830.

---

[2] Luper does not challenge the circuit court's rulings on the six other claims raised in his petition. Claims raised below but not argued on appeal are considered abandoned. *E.g.*, *Hayes v. State*, 2011 Ark. 327, 383 S.W.3d 824 (per curiam).

[3] To avoid confusion, we will refer to Robin Luper by her first name.

SLIP OPINION

On review of claims of ineffective assistance of counsel, this court follows the standard set forth by the Supreme Court of the United States in *Strickland v. Washington*, 466 U.S. 668 (1984). To prevail on a claim of ineffective assistance of counsel, the petitioner must show that (1) counsel's performance was deficient and (2) the deficient performance prejudiced his defense. *E.g.*, *Doty v. State*, 2016 Ark. 341.

Under the performance prong of the *Strickland* test, the petitioner must show that counsel's performance was deficient. *E.g.*, *Decay v. State*, 2014 Ark. 387, 441 S.W.3d 899. This factor requires a showing that trial counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the petitioner by the Sixth Amendment to the United States Constitution. *Id.*, 441 S.W.3d 899. The courts acknowledge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. *See, e.g.*, *Henington v. State*, 2012 Ark. 181, 403 S.W.3d 55. Accordingly, the petitioner has the burden of overcoming this presumption by identifying specific acts or omissions of counsel, which, when viewed from counsel's perspective at the time of trial, could not have been the result of reasonable professional judgment. *Id.*, 403 S.W.3d 55.

Under the prejudice prong of *Strickland*, even if counsel's conduct is shown to be professionally unreasonable, the judgment will stand unless the petitioner can demonstrate that the error had an actual prejudicial effect on the outcome of the proceeding. *E.g.*, *Lee v. State*, 2009 Ark. 255, 308 S.W.3d 596. In short, the petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *See id.*, 308 S.W.3d 596 (quoting *Strickland*, 466 U.S. at 694). A



reasonable probability is a probability sufficient to undermine confidence in the outcome of the trial. *E.g.*, *Doty*, 2016 Ark. 341.

"Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim." *Strickland*, 466 U.S. at 700. Accordingly, we need not address the *Strickland* components in a particular order or even address both components of the inquiry if the petitioner makes an insufficient showing on one. *See Strickland*, 466 U.S. at 697. The Court has stated that "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." *Id.*

## I. *Financial Motive*

Luper first contends that counsel was ineffective for failing to call Charles Mayhew to testify during the guilt phase of the trial.[4] According to Luper, Mayhew would have testified that Robin "had made a statement concerning the sale of Luper's 1967 Camaro to the effect that when it sold, she would 'have everything I need.'" Luper contends that this testimony would have bolstered his assertion that the "false" allegation of rape was a means for Robin to "obtain leverage" in her divorce action against him.

Robin testified that, since 2005, she and Luper had lived together with her three children, Luper's youngest son from a previous marriage, and a child that she and Luper had together. She stated that she and Luper divorced in 2013 and that she was not better off financially after the divorce than she was when she and Luper were married. She testified

---

[4] Mayhew testified for Luper in the sentencing phase of the trial.

that their furniture, televisions, and appliances were sold at auction and that she and Luper split the proceeds from the auction evenly.

Robin stated that the house was in both her name and Luper's name. She testified that she will live in the home until the child she and Luper have together turns eighteen. Robin stated when that child turns eighteen, the house will be sold, and she and Luper will split the proceeds equally. She also stated that, because she lives in the home rent-free, Luper is not obligated to pay child support for their child. Robin denied that the rape charge had benefited her family.

Robin testified that Luper's oldest son died in December 2010 while in the Army and that Luper was the beneficiary of his son's $500,000 military life insurance policy. She stated that, with that money, she and Luper paid off their mortgage, bought a new Yukon vehicle, bought her parents a car, bought cars for S.H. and Luper's teenaged son, and gave money to the widow of Luper's deceased son and to his sons' grandparents. Robin testified that she and Luper had built an addition to their house and installed an above-ground swimming pool. She denied that she thought that "things might be different if [Luper] was in prison for 30 or 40 years rather than going through the divorce process as a free man." Robin stated that Luper's incarceration "didn't get me anything . . . and actually made it harder."

Luper testified and confirmed Robin's testimony about how the insurance money had been spent. He further testified that he had bought himself a 1967 Camaro for $28,500.

S.H. testified that Luper's arrest did not help her financially. She said that, when Luper left the household, he took the car he had given her. According to S.H., she no longer had money to pay for college as she had before Luper was arrested.

Luper maintains that Mayhew's testimony would have disputed Robin's testimony that there was no financial motive for S.H. to claim that Luper had raped her. The State points out that Mayhew testified on Luper's behalf during the sentencing phase of the trial and said that he is a friend of Luper's. The State contends that Mayhew would be biased because of his friendship with Luper and that anything Robin might have said to Mayhew about selling the Camaro would not prove that she expected her financial issues to be resolved from the sale of the vehicle.

The jury determines not only the credibility of witnesses, but also the weight and value of their testimony. *See, e.g.*, *Jones v. State*, 2014 Ark. 448, 486 S.W.3d 743. Mayhew's testimony may have had an adverse effect on Robin's credibility. On the other hand, the jury might have dismissed Mayhew's testimony, given his friendship with Luper. In short, the jury might not have resolved the credibility determination in Luper's favor.

When assessing counsel's decision not to call a witness, we must take into account that the decision is largely a matter of professional judgment that experienced advocates could endlessly debate. *E.g.*, *Williams v. State*, 2011 Ark. 489, 385 S.W.3d 228. The fact that there was a witness who could have offered beneficial testimony is not, in and of itself, proof of counsel's ineffectiveness. *Id.*, 385 S.W.3d 228. Luper has failed to show that, had counsel presented Mayhew's testimony, the outcome of the trial would have been different.



*See Moten v. State*, 2013 Ark. 503 (per curiam). Thus, he has failed to satisfy the prejudice prong of *Strickland*. The circuit court did not err in denying relief on this claim.

## II. *Financial Demands*

In a corollary argument, Luper contends that counsel was ineffective for failing to adequately explore Robin's "financial demands." He claims that, had counsel asked Robin about her demands that he sign over the house and automobiles to her, there is a reasonable probability that the outcome of the trial would have been different. We disagree.

Luper testified that the day after the rape allegation had been made, he and Robin began negotiations for their divorce. He stated that he refused to sign over the house, cars, and household furnishings to Robin. He further stated that he refused to pay the household debts. Robin testified that the household furnishings were auctioned with the proceeds split equally between Luper and her. She also testified that when the house is sold, she and Luper will split the proceeds evenly.

Robin testified at length about financial matters on both direct and cross-examination. Luper's attorney specifically asked Robin if she "thought that things might be different if [Luper] was in prison for 30 or 40 years rather than going through the divorce process as a free man," and she responded that she had not benefited financially from Luper's being in jail.

Trial counsel told the jury in opening statement that the case was not about rape allegations but was about money. In closing argument, trial counsel stated that the allegations were a "money motivator" for Robin. The jury heard testimony about the Lupers' finances and divorce. Luper has failed to demonstrate that additional questioning about Robin's

SLIP OPINION

"demands" would have had any effect on the outcome of the trial. The circuit court did not err in denying relief on this claim.

### III. *Walmart Videos*

Luper's remaining arguments involve evidentiary matters. He asserts that counsel was ineffective for failing to present at trial videos from Walmart showing that Luper and S.H. were together the day after the rape. Luper acknowledges that both he and S.H. testified that they went to Walmart together that day, but he asserts that the videos should have been presented to show S.H.'s demeanor. The State responds that neither S.H. nor Luper testified that S.H.'s demeanor was other than normal, and that in the absence of testimony that S.H. displayed fear or emotion while at Walmart, there was nothing for the videos to rebut.

This court will not grant an evidentiary hearing on an allegation that is not supported by specific facts from which it can be concluded that the petitioner suffered some actual prejudice. *E.g.*, *McDaniels v. State*, 2014 Ark. 181, 432 S.W.3d 644. Here, the video evidence would have been cumulative to testimony about the trip to Walmart. Luper has failed to show that the outcome of the trial would have been different if counsel had presented the videos. *See, e.g.*, *Simpson v. State*, 355 Ark. 294, 138 S.W.3d 671 (2003) (stating that the omission of cumulative evidence does not deprive the defense of vital evidence). The circuit court did not err in denying relief on this claim without a hearing.

### IV. *Phone Records*

Luper contends that counsel was ineffective for failing to obtain S.H.'s phone records. He claims that, if counsel had procured the records, he could have shown the jury that S.H.



was using her phone when the rape occurred and that the phone contained text messages in which Robin had encouraged S.H. to falsely allege that he had raped her.

Luper does not offer any proof that exculpatory evidence could have been found in the phone records. Nevertheless, he claims that if a hearing is held, he will have subpoena power to obtain and present the records. The strong presumption in favor of counsel's effectiveness cannot be overcome by a mere possibility that an evidentiary hearing might produce evidence to bolster an allegation contained in a petition for postconviction relief. *E.g.*, *McDaniels*, 2014 Ark. 181, 432 S.W.3d 644; *see also Hayes v. State*, 280 Ark. 509, 660 S.W.2d 648 (1983) (per curiam) (stating that Rule 37 is not available to the petitioner who wishes to have a hearing in the hopes of finding some ground for relief). The circuit court did not err in denying relief on this claim without a hearing.

## V. *Car Shows*

Finally, Luper contends that counsel was ineffective for failing to ask H.H., S.H.'s sister, if he ever took her to car shows and for not calling his aunt and his brother to testify that he had taken H.H. to car shows. He states that this testimony would rebut the implications that he was singling out and isolating S.H. so that he could molest her.

H.H. testified and was excused before S.H. was called. H.H. was not asked whether she had attended car shows with Luper. S.H. testified that she did not "think" H.H. had ever gone to car shows with Luper. Luper testified that he had taken H.H. to at least four car shows. Any additional testimony would have been cumulative to Luper's assertion that he had taken H.H. to car shows. The failure to call witnesses whose testimony would be cumulative to testimony already presented does not deprive the defense of vital evidence.

*E.g.*, *Bond v. State*, 2013 Ark. 298, 429 S.W.3d 185 (per curiam). Luper's failure to demonstrate prejudice precludes relief under Rule 37. *E.g.*, *Dansby v. State*, 350 Ark. 60, 84 S.W.3d 857 (2002). The circuit court did not err in denying Luper relief on this claim.

## VI. *Hearing*

In conclusion, we disagree with Luper's contention that he was entitled to a hearing. An evidentiary hearing is required unless the petition and the files and records of the case conclusively show that the petitioner is not entitled to relief. Ark. R. Crim. P. 37.3(a). Having reviewed the petition and the files and records of the case, we conclude that Luper is not entitled to postconviction relief. The circuit court did not err in denying Luper's petition without a hearing.

Affirmed.

*Jeff Rosenzweig*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Brad Newman*, Ass't Att'y Gen., for appellee