SLIP OPINION

Cite as 2014 Ark. 181

# SUPREME COURT OF ARKANSAS

No. CR-13-301

| | |
|---|---|
| WILLIE AUTHOR MCDANIELS<br>APPELLANT | **Opinion Delivered** April 24, 2014 |
| V. | APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, [NO. CR-09-187] |
| STATE OF ARKANSAS<br>APPELLEE | HONORABLE HERBERT THOMAS WRIGHT, JR., JUDGE |
| | AFFIRMED. |

**JIM HANNAH, Chief Justice**

Appellant, Willie Author McDaniels, appeals from the denial of his petition for postconviction relief pursuant to Arkansas Rule of Criminal Procedure 37. Appellant was convicted of two counts of rape of his step-granddaughter, Q.A., and sentenced to a total of 480 months in the Arkansas Department of Correction. The court of appeals affirmed on direct appeal. *See McDaniels v. State*, 2012 Ark. App. 219. Appellant then filed a petition for postconviction relief, which the circuit court denied without an evidentiary hearing. On appeal, Appellant contends that the circuit court clearly erred in rejecting without a hearing his claims that (1) trial counsel was ineffective for failing to object to defective charging language and jury instructions, and (2) trial counsel was ineffective for failing to adequately investigate and utilize evidence of a third party's semen found on the victim's pants. We affirm the circuit court's order.

On appeal from a circuit court's ruling on a petitioner's request for Rule 37 relief, this

SLIP OPINION

court will not reverse the circuit court's decision granting or denying postconviction relief unless it is clearly erroneous. *E.g.*, *Prater v. State*, 2012 Ark. 164, at 8, 402 S.W.3d 68, 74. A finding is clearly erroneous when, although there is evidence to support it, the appellate court after reviewing the entire evidence is left with the definite and firm conviction that a mistake has been committed. *Id.*, 402 S.W.3d at 74.

The criteria for assessing the effectiveness of counsel were enunciated by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). In asserting ineffective assistance of counsel under *Strickland*, the petitioner must first show that counsel's performance was deficient. *Williams v. State*, 2011 Ark. 489, at 4, 385 S.W.3d 228, 232. This requires a showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the petitioner by the Sixth Amendment. *Id.*, 385 S.W.3d at 232. The reviewing court must indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Id.*, 385 S.W.3d at 232. Second, the petitioner must show that counsel's deficient performance prejudiced the defense, which requires showing that counsel's errors were so serious as to deprive the petitioner of a fair trial. *Id.*, 385 S.W.3d at 232. In doing so, the petitioner must show that there is a reasonable probability that, but for counsel's errors, the fact-finder would have had a reasonable doubt respecting guilt, which means that the decision reached would have been different absent the errors. *Id.*, 385 S.W.3d at 232. A reasonable probability is a probability sufficient to undermine confidence in the outcome of the trial. *Id.*, 385 S.W.3d at 232–33. Unless a petitioner makes both *Strickland* showings, it cannot be said that the conviction resulted from

a breakdown in the adversarial process that renders the result unreliable. *Id.*, 385 S.W.3d at 233.

In his first point on appeal, Appellant contends that the circuit court clearly erred in rejecting without a hearing his claim that trial counsel was ineffective for failing to object to defective charging language and jury instructions. Count Two of the felony information charged Appellant with committing rape, in violation of Arkansas Code Annotated section 5-14-103, and alleged that on or about June 23, 2007, through October 17, 2008, Appellant "unlawfully, feloniously, did engage in sexual intercourse or deviate sexual activity with Q.A. . . . who was less than eighteen (18) years of age, and the actor was the victim's guardian, to wit: step-grandparent, against the peace and dignity of the State of Arkansas." At trial, the circuit court instructed the jury that, to sustain the charge of rape as to Count Two, the State had to prove beyond a reasonable doubt (1) that Appellant engaged in sexual intercourse or deviate sexual activity with Q.A.; (2) that Q.A. was less than eighteen years old at the time of the offense; and (3) that Appellant was Q.A.'s guardian or step-grandparent. Appellant alleged in his petition for postconviction relief that trial counsel was ineffective for failing to object to the language in the charging document because the definition of "guardian" found in Arkansas Code Annotated section 5-14-101 does not specifically include a step-grandparent. He also claimed that there was insufficient evidence presented at trial to demonstrate that he was Q.A.'s guardian. Appellant contended that the felony information

showed that he was charged pursuant to the "guardian" subsection[1] of the rape statute and that, "[o]nce the trial commenced without amendment to the information, any evidence or references accusing the Defendant of rape for being in the position of 'step-grandparent' should have been objected to by trial counsel." He further contended that trial counsel was ineffective for failing to object to the language in the jury instruction "making reference to the Defendant as 'step-grandparent.'"

The circuit court found that trial counsel committed error by failing to object to the language of Count Two. Nevertheless, the circuit court found that under Arkansas Code Annotated section 5-14-103, Appellant could be convicted of rape for engaging in sexual intercourse or deviate sexual activity with Q.A. if he was either Q.A.'s guardian or her step-grandparent, and the circuit court found that the evidence at trial demonstrated that Appellant met the definition of both. The circuit court further found that, had trial counsel objected to the use of the term "guardian" in Count Two of the felony information, "based solely on the defendant's status as step-grandparent, the information could have been amended at any point prior to the submission of the case to the jury to reflect that he was being charged as a step-grandparent and the jury so instructed, as there would have been no change in the nature or degree of the charge." Accordingly, the circuit court found that Appellant had not "suffered such prejudice as a result of his attorney's error as to warrant relief" pursuant to Rule 37.

---

[1]The felony information cites the rape statute, Arkansas Code Annotated section 5-14-103, but it does not cite a specific subsection of that statute.

A person commits rape if he or she engages in sexual intercourse or deviate sexual activity with another person who is less than eighteen years of age and the actor is the victim's guardian, *see* Ark. Code Ann. § 5-14-103(a)(4)(A)(i) (Repl. 2006), or step-grandparent, *see id*. § 5-14-103(a)(4)(A)(ii). A "guardian" is defined as "a parent, stepparent, legal guardian, legal custodian, foster parent, or *any person who by virtue of a living arrangement is placed in an apparent position of power or authority over a minor.*" *Id*. § 5-14-101(3) (Repl. 2006) (emphasis added). The State contends that, in this case, although it is not entirely clear from the felony information whether the State intended to charge Appellant with rape under part (i) or part (ii) of Arkansas Code Annotated section 5-14-103(a)(4)(A), the circuit court correctly found that any error by trial counsel in failing to object to the charging language did not prejudice Appellant in light of evidence presented by the State that Appellant was both Q.A.'s guardian *and* her step-grandparent.

Appellant did not contest the fact that he was Q.A.'s step-grandfather. He testified at trial that he had been married to Q.A.'s grandmother, Gloria McDaniels, for thirty-three years. Q.A. testified at trial that Appellant was her step-grandfather, and that she called him "Paw Paw" while growing up. As to the allegation that Appellant was also Q.A.'s guardian, there was testimony at trial from Q.A., Q.A.'s relatives, and Appellant himself that Q.A. had spent a great deal of time at Appellant's home from the time she was a young child. Yolanda Allen, Appellant's stepdaughter, testified that Q.A. was around Appellant "from birth," because she was the "first born grandchild," and that Q.A. went places with Appellant and rode in the car with him "all the time." Bridget White, Q.A.'s mother, testified that Q.A.

went on vacation with Appellant and Q.A.'s grandmother to Florida and that when Q.A. moved back to Arkansas from Texas in the summer of 2007, Q.A. often spent the night with them. White also testified that Appellant bought clothes and a cell phone for Q.A. Q.A. testified that, when she returned from Texas, she lived at both her mother's house and Appellant's house, stating that, if she had school the next day, she spent the night with Appellant and her grandmother because Appellant "was like transportation . . . [a]nd my mom didn't have a car at the time, so that's how we would get back and forth to school." Q.A. testified that her grandmother would leave for work around 6:00 a.m., and Appellant would walk through the house to make sure everyone else was still sleeping and then he would "come in [my] room . . . pull my pants down, . . . pull his pants off, and [he'd] take his penis and stick it inside me." Q.A. stated that Appellant bought her food and clothes, paid her cell-phone bill, and gave her money and told her that, if she told anyone about the rapes, he would "stop me from coming around my granny," and "he'll stop doing stuff for me." Q.A. also said that Appellant told her that if she accused him of rape, nobody would believe her. Q.A.'s grandmother testified that Q.A. was at the McDaniels home "mostly . . . on the weekends, and through the summer she was there all the time." She also stated that, when Q.A.'s mother was working at the state fair, Q.A. spent the night at the McDaniels home during the school week. Q.A.'s grandmother also testified that she and Appellant bought clothes and a cell phone for Q.A., stating that they "pretty much [did] the same thing for" Q.A. that they did for their son, Jacob, who was a year younger than Q.A. Appellant testified that he treated Jacob and Q.A. the same, stating, "I raised 'em – – when I do something for

one of 'em, I do for all of 'em. I wouldn't do nothing for one if I didn't do it for all of 'em 'cause I didn't want 'em thinking that I picked one out of, you know, just picked one and not helping the other one."

The State contends that, given the evidence presented at trial, Appellant could have been convicted as either a "guardian" or a "step-grandparent." As previously noted, Appellant did not dispute that he was Q.A.'s step-grandparent. In his petition for postconviction relief, however, Appellant contended that there was insufficient evidence that he was Q.A.'s guardian. The circuit court found that there was testimony at trial from Q.A. and Q.A.'s relatives, including Appellant, that Q.A. had spent a great deal of time at Appellant's home from the time she was a young child and that this visitation would often include staying over nights and weekends. The circuit court also found that the pattern of staying at Appellant's residence would, due to its extended nature and repetition, qualify as a "living arrangement" under Arkansas Code Annotated section 5-14-101(a)(4)(A)(i), and would have placed Appellant in a position of power or authority over a minor, thus meeting the definition of "guardian." We conclude that the circuit court did not clearly err in finding that there was sufficient evidence that Appellant was both Q.A.'s guardian and step-grandparent.

We also conclude that the circuit court did not clearly err in finding that even if trial counsel had objected to the language used in the information or in the subsequent jury instruction, the State could have corrected any mistake by amending the information. It is axiomatic that the State is entitled to amend an information at any time prior to the case

being submitted to the jury as long as the amendment does not change the nature or degree of the offense charged or create unfair surprise. *E.g., Rueda v. State*, 2012 Ark. 144, at 9, 400 S.W.3d 226, 231. In the instant case, amending the information would not have changed the nature or degree of the crime charged in Count Two because the victim was less than eighteen years old, and Appellant was the victim's guardian or step-grandparent.[2] Moreover, Appellant has failed to demonstrate that an amendment would have created an unfair surprise or prevented him from preparing an adequate defense. Appellant knew before trial that the State intended to offer evidence that he was Q.A.'s guardian and step-grandparent because the felony information alleged that he was both. *See, e.g., Madewell v. State*, 290 Ark. 580, 582–83, 720 S.W.2d 913, 914–15 (1986) (holding that trial counsel was not ineffective in failing to object when the information charged appellant with three counts of aggravated robbery, a Class Y felony, but the prosecutor listed the statute for robbery, a Class B felony); *Andrews v. State*, 265 Ark. 390, 404, 578 S.W.2d 585, 592 (1979) (holding that listing the wrong statutory subsection in the felony information was harmless error when (1) it was apparent that the mistake was a typing error, (2) the trial court correctly stated the substance of the charge when instructing the jury, and (3) there was no showing by the appellant that he was in any way prejudiced by the mistake in the information); *Ridgeway v. State*, 251 Ark. 157, 158–59, 472 S.W.2d 108, 109 (1971) (rejecting appellant's argument that there was a

---

[2]Pursuant to Arkansas Code Annotated section 5-14-103(a)(4)(A), a person commits rape if he or she engages in sexual intercourse or deviate sexual activity with another person who is less than eighteen years of age and the actor is the victim's (i) guardian, (ii) uncle, aunt, grandparent, step-grandparent, or grandparent by adoption; (iii) brother or sister of the whole or half blood or by adoption; or (iv) nephew, niece, or first cousin.

SLIP OPINION

fatal variance between an information and the proof entitling him to a directed verdict when the information charging him with assault with the intent to kill asserted that the assault had been made with a deadly weapon, namely, a knife, but the State's proof at trial was that appellant shot the victim with a pistol, because appellant did not plead surprise and if appellant had objected, the defect in the information could readily have been corrected). Even assuming that counsel erred in failing to object to the language in the information, Appellant has failed to show that counsel's error prejudiced the defense to the extent that there is a reasonable probability that, but for counsel's error, the jury would have had a reasonable doubt respecting his guilt.[3]

In addition, we find no merit in Appellant's argument that he was entitled to an evidentiary hearing to "explore" whether the State would have amended the charge in response to an objection from trial counsel and because it "may well be discovered that trial counsel was unaware of the defect and would have approached the trial completely differently had trial counsel not have overlooked the error." This court will not grant an evidentiary hearing on an allegation that is not supported by specific facts from which it can be concluded that the petitioner suffered some actual prejudice. *E.g.*, *Whitmore v. State*, 299 Ark. 55, 66, 771 S.W.2d 266, 271 (1989). To the extent that Appellant argues that a hearing

---

[3]We note that Appellant also contends that trial counsel was ineffective in failing to object to the jury's consideration of evidence that he was Q.A.'s step-grandparent, "despite the fact that he could not be guilty of rape as a step-grandparent under the provision he was charged with." Although raised in Appellant's petition, the circuit court's order denying relief does not contain a ruling on this claim. It is the appellant's obligation to obtain a ruling on any omitted issues in order to preserve those issues for appeal. *E.g.*, *Beshears v. State*, 340 Ark. 70, 72–73, 8 S.W.3d 32, 34 (2000).

should have been held to bolster the conclusory allegations contained in his petition, the strong presumption in favor of counsel's effectiveness cannot be overcome by a mere possibility that a hearing might produce evidence to support an allegation contained in a petition for postconviction relief. *E.g.*, *Hickey v. State*, 2013 Ark. 237, at 7, ___ S.W.3d ___, ___ (per curiam). In sum, the circuit court did not clearly err in rejecting without a hearing Appellant's claim that trial counsel was ineffective for failing to object to defective charging language and jury instructions.

Appellant next contends that the circuit court clearly erred in rejecting without a hearing his claim that trial counsel was ineffective for failing to adequately investigate and utilize evidence of a third party's semen found on the victim's pants. North Little Rock Police Detective Julie Rose testified at trial that she took Q.A.'s initial statement that led to the rape charges against Appellant. Q.A. testified that she thought a pair of ROTC pants she was wearing during one of the assaults might have Appellant's DNA on them because something that "[c]omes out of him got on the pants on the bed." Rose testified that a pair of ROTC pants and other clothing were brought to her by Q.A.'s mother. Rose then submitted the clothing to the Arkansas State Crime Laboratory for testing. Forensic serologist Tonia Silas testified that she examined the clothing submitted for testing and that she discovered semen on the ROTC pants. Forensic DNA examiner Mary Simonson compared the DNA from the semen found on the ROTC pants with Appellant's DNA. Simonson testified that after she compared the DNA samples, she excluded Appellant as a contributor of the DNA found on the ROTC pants.



In his petition for postconviction relief, Appellant contended:

Although trial counsel reached a stipulation to introduce the results of the test, she failed to fully investigate and introduce evidence related to the circumstances related to this discovery which was pivotal to the motivation and the credibility of the alleged victim and an explanation for the victim's alleged "disclosure" that the Defendant had engaged in sexual intercourse with her.

As this case fell squarely upon the testimony of the alleged victim, her credibility was a pivotal matter. Trial counsel's failure to fully investigate and introduce evidence on her reasons and motivations and explanation for the semen found upon her pants was ineffective and prejudiced the Defendant by depriving the jury of information relevant to their credibility assessment.

In rejecting this claim, the circuit court made the following findings:

The defendant does not state what use could or should have been made of this evidence by defendant's trial counsel, other than referencing the victim's credibility and her "reasons and motivations and explanation for the semen found upon her pants."

Evidence was put before the jury of the existence of semen found on the victim's clothing which was not that of the defendant. The allegation that trial counsel was ineffective in her use of this evidence is a conclusory allegation. Furthermore, there is no showing that there was any additional evidence available regarding the circumstances of how the semen got on the pants, or that any such evidence or testimony would have been admissible even had it existed. The determination of what use to make of the evidence and testimony regarding the testing of the ROTC pants was a matter of trial tactics and strategy, and the defendant has not demonstrated ineffective assistance in this regard.

On appeal, Appellant asserts that "[t]he issues of who produced the semen, when it was produced, how it arrived there, and possible lies regarding [it] being [Appellant's] semen were never probed by trial counsel." He further asserts that he "was entitled to a hearing on the failure to fully investigate and utilize this information." When a petitioner alleges ineffective assistance of counsel for failure to perform adequate investigation, he or she must delineate the actual prejudice that arose from the failure to investigate and demonstrate a

reasonable probability that the information that would have been uncovered with further investigation could have changed the trial outcome. *E.g.*, *Mason v. State*, 2013 Ark. 492, at 8, ___ S.W.3d ___, ___. The burden is entirely on the petitioner to provide facts that affirmatively support his or her claims of prejudice; neither conclusory statements nor allegations without factual substantiation are sufficient to overcome the presumption that counsel was effective, and such statements and allegations will not warrant granting postconviction relief. *E.g.*, *Bryant v. State*, 2013 Ark. 305, at 9–10, ___ S.W.3d ___, ___ (per curiam). In this case, the jury was made aware, through the testimony of Simonson, that the DNA extracted from the semen found on Q.A.'s pants did not match Appellant's DNA. Appellant fails to delineate the actual prejudice that arose as a result of trial counsel's alleged ineffectiveness, and his bare assertion of prejudice is a conclusory allegation that cannot form the basis of relief. *E.g.*, *Eastin v. State*, 2010 Ark. 275, at 4.

Finally, Appellant has failed to demonstrate that he was entitled to a hearing on his failure-to-investigate claim. There is no requirement that the court grant an evidentiary hearing on an allegation other than one of specific facts from which it can be concluded that the petitioner suffered some actual prejudice. *E.g.*, *Preston v. State*, 306 Ark. 408, 410, 815 S.W.2d 389, 390 (1991). Furthermore, the supporting facts must appear in the petition, and the petitioner cannot rely on the possibility that facts will be elicited from witnesses if a hearing is held. *Id.*, 815 S.W.2d at 390. Postconviction relief is not available to the petitioner who wishes to have a hearing in the hopes of finding some ground for relief. *E.g.*, *Hayes v. State*, 280 Ark. 509, 509–C, 660 S.W.2d 648, 651 (1983). The circuit court did not clearly

err in rejecting without a hearing Appellant's claim that trial counsel was ineffective for failing to adequately investigate and utilize evidence of a third party's semen found on the victim's pants.

Affirmed.

*James Law Firm*, by: *Lee D. Short*, for appellant.

*Dustin McDaniel*, Att'y Gen., by: *Kathryn Henry*, Ass't Att'y Gen., for appellee.