Cite as 2025 Ark. App. 566

# ARKANSAS COURT OF APPEALS

DIVISION III
No. CR-24-746

| | | |
|---|---|---|
| TYLER CHANDLER | | Opinion Delivered November 19, 2025 |
| | APPELLANT | |
| V. | | APPEAL FROM THE WASHINGTON COUNTY CIRCUIT COURT [NO. 72CR-22-638] |
| STATE OF ARKANSAS | | |
| | APPELLEE | HONORABLE JOANNA TAYLOR, JUDGE |
| | | AFFIRMED |

**KENNETH S. HIXSON, Judge**

Appellant Tyler Chandler filed his appeal after the Washington County Circuit Court entered an order denying his amended petition for postconviction relief filed pursuant to Arkansas Rule of Criminal Procedure 37.1. Appellant argues on appeal that the circuit court erred in denying his amended petition for postconviction relief because (1) his trial counsel was ineffective; (2) the circuit court failed to make specific written findings as required; and (3) the circuit court erred in not giving him a hearing on his petition as required. We affirm.

I. *Background*

Before addressing the allegations of ineffective assistance of counsel, it is necessary to discuss some of the events leading to appellant's jury trial and the evidence adduced at trial. On January 19, 2022, appellant sexually assaulted the minor victim (MV) a day before her

sixteenth birthday after giving her a benzodiazepine. Appellant was charged by a third amended felony information with two counts of second-degree sexual assault, a Class B felony, in violation of Arkansas Code Annotated section 5-14-125(a)(4)(A)(iv) (Supp. 2023); and one count of introducing a Schedule IV controlled substance into the body of another person, a Class C felony, in violation of Arkansas Code Annotated section 5-13-210(b) and (c)(3) (Supp. 2023). A jury trial was held on June 20, 2023.

Amanda McClain, a licensed practical nurse, testified that she has two children. Appellant is the father of one of her children, and Ms. McClain explained that, despite some custody issues, they had been coparenting at the time of the incident. She had asked appellant to watch both children on the night of January 19, 2022, while she worked an overnight shift. MV is Ms. McClain's niece. Ms. McClain testified that she had not suggested nor had appellant told her that MV would also be at her home that night. When she returned home after her shift, she found MV asleep in her bed. She thought appellant's behavior was "erratic," and she testified that she discovered a plastic bag containing white-colored rocks in appellant's pocket that she suspected were drugs. Ms. McClain additionally testified that she had seen appellant's prescription bottle for clonazepam. She described the side effects of the medication and stated that the pills inside the bottle were yellow and round. She further opined that the bottle felt lighter the morning she returned home than it had felt the night before she left. After appellant left the home and MV woke up, MV disclosed to Ms. McClain that appellant had sexually assaulted her, and Ms. McClain called law enforcement as a mandated reporter. Ms. McClain further testified that she purchased

2

and administered a home drug-screening test, which showed that MV tested positive for benzodiazepine. Ms. McClain explained that clonazepam is a benzodiazepine and that none of MV's prescriptions would "show positive for benzodiazepine."

MV testified at trial that appellant sent her a message on Facebook Messenger on January 19, 2022, asking her how she was feeling. She had been recovering from COVID-19. These messages were admitted into evidence. MV told appellant that she felt better, and appellant asked her if she wanted to come over to help him watch the children. MV agreed, and appellant picked her up. MV testified that appellant left the children at Ms. McClain's home in a closed bedroom while he picked her up. MV stated that she played video games for a while, and appellant put a frozen pizza in the oven for dinner. While waiting on the pizza to cook, appellant asked MV if she had ever smoked marijuana and offered MV two pills that he said would calm any anxiety she had. MV explained that she took one of the pills, which she described as a tiny yellow disc.

After dinner, appellant put the two younger children to bed. MV stated at trial that she had been watching television in the living room but "suddenly got, like really tired, but [she] was, like, really aware of [her] surroundings . . . [she] just felt weird." MV explained that appellant sat down on the couch with her and held her hand, which she felt weird about but did not say anything. At that point, appellant moved closer to MV and slid his hand under her sweatshirt and felt her breasts, both above and under her bra. Appellant then unbuttoned MV's pants, pulled them down a bit, and tried to put his hand down her pants. He then laid down next to MV. MV stated that appellant was not wearing any pants or

underwear and that she could feel appellant's penis against her leg. Appellant proceeded to put his mouth on her breasts and tried to pull MV's pants completely off. MV explained that she became "really freaked out," and appellant carried her to the bedroom. Appellant laid down next to MV on the bed and continued to hold her. MV testified that appellant told her that she was "a very sexy girl." MV eventually was able to get up and get dressed. She explained that she pretended nothing had happened because she was afraid appellant would hurt her. After appellant left the next morning, she reported the incident to her aunt, Ms. McClain.

Officer Chase Scallorn testified that he responded to the scene and saw that MV "was very calm and reserved, almost like in a state of shock." He explained that her behavior was very common with victims who had experienced trauma.

Detective Hunter Helms testified that he investigated the allegations. He explained that he did not have MV undergo a rape kit because there were no allegations of penetration. Ms. McClain provided him with a list of medications she thought appellant was taking, including clonazepam. Detective Helms testified that clonazepam is a benzodiazepine, a Schedule IV controlled substance, and that it usually comes in the form of a yellowish round pill. Detective Helms further testified that during his investigation, he interviewed appellant. Detective Helms stated that although appellant denied the allegations, he thought appellant appeared very nervous during the interview and that appellant was being deceitful. On cross-examination, Detective Helms did admit that it was not unusual for some people to be nervous when being questioned by law enforcement.

4

Dale Chiddister, a civilian investigator with the Arkansas State Police Crimes Against Children Division, testified that he conducted a forensic interview of MV. He explained that after his investigation, he concluded that the allegations of sexual abuse against appellant were true. He further explained that he has experience in determining whether a victim had been coached on what to say during an interview, and given MV's answers during the interview, he did not think MV had been coached.

Appellant testified on his own behalf and denied the allegations. He further testified that he had been communicating with Ms. McClain via Facebook Messenger on the night in question, but he claimed that the messages had become inaccessible because Ms. McClain deleted her account. Appellant claimed the messages proved that not only was Ms. McClain aware that MV had come over but also that it was actually Ms. McClain's idea that MV come over to have her play with the children. He denied that Ms. McClain discovered that he had drugs on him. Although he admitted he had taken three or four clonazepam pills to the home, he denied giving any to MV.

After all the evidence had been presented, the circuit court reviewed the proposed jury instructions. Both the State and appellant agreed that the jury instructions were acceptable and that there were not any other proposed instructions they wished to give the jury.

The jury convicted appellant of two counts of second-degree sexual assault and one count of introducing a Schedule IV controlled substance into the body of another. The jury recommended that he be sentenced to serve ten years' imprisonment on each of the two

5

counts of second-degree sexual assault and five years' imprisonment on the count of introduction of a controlled substance into the body of another, to be served consecutively, which the circuit court imposed.

Appellant appealed his conviction to this court. On appeal, appellant argued that we must reverse his conviction because (1) the State made improper comments during closing arguments; (2) a jury instruction failed to comport with the underlying statutory language; and (3) his defense counsel failed to perform an adequate investigation to aid in his defense. Appellant acknowledged that he failed to make any of the three objections he complained of on appeal before the circuit court; however, he nevertheless argued that we may address those issues for the first time on appeal by applying the exceptions to the contemporaneous-objection rules as outlined in *Wicks v. State*, 270 Ark. 781, 606 S.W.2d 366 (1980). We disagreed and affirmed. *Chandler v. State*, 2024 Ark. App. 260, 688 S.W.3d 170 (*Chandler I*).

I. *Petition for Postconviction Relief*

After we affirmed on direct appeal and the mandate was issued in *Chandler I*, appellant filed a timely petition for postconviction relief. In his petition, appellant argued that his trial counsel was ineffective (1) when "he did not do an investigation into [appellant's] messages with [MV's aunt] the night of the incident"; (2) for failing to file a pretrial motion seeking to suppress the testimony of MV's aunt, a licensed nurse, who gave MV a drug test to determine if she had ingested a controlled substance; (3) for failing to object to the testimony of a forensic interviewer, Dale Chiddister, who questioned MV regarding the incident with appellant and testified that he found MV's allegation to be true;

6

(4) for failing to object to an allegedly unconstitutional jury instruction; (5) for failing to object to remarks made by the prosecutor during closing argument that defendant had the burden of producing Facebook messages that he testified he had with MV's aunt; (6) for failing to object to the prosecutor's closing argument that appellant's explanation regarding deleted Facebook messages was false; (7) for failing to object to the prosecutor's remark in closing argument that the State could have charged appellant with an additional offense; (8) for failing to object to the prosecutor's remarks that he is a "poor father"; (9) for failing to properly argue his directed-verdict motion challenging the sufficiency of the evidence; and (10) for failing to call any witnesses during the sentencing phase of appellant's trial.

Without a hearing, the circuit court filed an eight-page order denying appellant's petition on July 15, 2024. After discussing the history of the case, the circuit court made the following findings regarding each ground alleged by appellant:

12. Ground 1 alleges ineffective assistance of counsel because Trial Counsel "did not do an investigation into defendant's messages with Ms. McClain the night of the incident." Here, petitioner presented no persuasive evidence or facts to support his conclusory allegations in Ground 1. Further, petitioner failed to demonstrate that Trial Counsel's performance fell below an objective standard of reasonableness. The Court finds that Trial Counsel addressed this issue of Petitioner's alleged messages with Petitioner on his direct examination. RT 232, 11-25. The Court also finds that Trial Counsel's choice not to pursue locating messages that may or may not have existed was a matter of trial strategy. Petitioner also failed to demonstrate how investigating the availability of messages that may or may not have existed, prior to trial, could have changed the outcome of the trial.

13. Ground 2 alleges ineffective assistance of counsel because Trial Counsel "did not file a pre-trial motion concerning" the lack of "physical evidence" of a drug test administered to the victim by Ms. McClain, the victim's aunt. Here, Petitioner presented no persuasive evidence or facts to support his conclusory

7

allegations in Ground 2. Further, Petitioner failed to demonstrate that Trial Counsel's performance fell below an objective standard of reasonableness. The Court finds that Trial Counsel's addressing the issue through "cross-examinations and closing arguments," as indicated by Petitioner, was a matter of trial strategy. Petitioner also failed to demonstrate how filing a pre-trial motion addressing the lack of physical evidence of the drug text would have changed the outcome of the trial.

14. Ground 3 alleges ineffective assistance of counsel because Trial Counsel failed to "object to the testimony of Dale Chiddister with the Arkansas State Police." Specifically, Petitioner alleges that Counsel was ineffective because he could have successfully blocked aspects of Mr. Chiddister's testimony with a pre-trial motion. Here, Petitioner presented no persuasive evidence or evidence to support his conclusory allegations in Ground 3. Further, Petitioner failed to demonstrate that Trial Counsel's performance was deficient and fell below an objective standard of reasonableness. The Court finds that Trial Counsel addressed Mr. Chiddister's testimony on cross-examination RT 147-149, and that any decision not to object to, or any choice not to file a pre-trial motion to suppress the same, was a matter of trial strategy. Further, the Court finds that the victim's testimony in this case was credible, and petitioner has provided no facts to show that the jury did not give the victim's own testimony its proper weight. A victim's testimony alone is sufficient to secure a conviction in the state of Arkansas. Petitioner has failed to demonstrate how failing to object to Mr. Chiddister's testimony, or failing to file a pretrial motion to suppress the same, would have changed the outcome of the trial.

15. Ground 4 alleges ineffective assistance of counsel because Trial Counsel "did not object to clearly unconstitutional jury instructions." Here, Petitioner presented no persuasive evidence or evidence to support his conclusory allegations in Ground 4. The court finds that there was nothing in the instruction given that shifted the burden to Petitioner. Further, Petitioner did not proffer the jury instruction that he alleges should have been given. Any failure or choice not to object to the proffered jury instruction at the time of trial was a matter of trial strategy. Petitioner has also failed to state how, even if the jury instruction was correct, it would have changed the outcome of the trial.

16. Ground 5 alleges ineffective assistance of counsel because Trial Counsel failed, during closing arguments, to object to the prosecutor's argument that "defendant had the burden of producing Facebook messages." Here, Petitioner presented no persuasive evidence or facts to support his conclusory

allegations in Ground 5. Further, Petitioner failed to demonstrate that Trial Counsel's performance fell below an objective standard of reasonableness. The Court finds that Trial Counsel did object to prosecutor's statements regarding the Facebook messages during Cross-examination of the Petitioner; the objection was sustained. RT 253 - 255. Any choice not to re-object to the prosecutor's synthesis and characterization of the Petitioner's own testimony during closing arguments was a matter of trial strategy. Petitioner also failed to demonstrate how objecting to these statements during closing arguments would have changed the outcome of the trial.

17. Ground 6 alleges ineffective assistance of counsel because Trial Counsel failed to object to the prosecutor's argument about how Facebook messages technically work "despite presenting no evidence of the same." Here, Petitioner presented no persuasive evidence or facts to support his conclusory allegations in Ground 6. Further, Petitioner failed to demonstrate that Trial Counsel's performance fell below an objective standard of reasonableness. The Court finds that any choice not to object to the prosecutor's synthesis and characterization of the Petitioner's own testimony during closing arguments was a matter of trial strategy. Petitioner also failed to demonstrate how objecting to prosecutor's arguments regarding how Facebook messaging works would have changed the outcome of the trial.

18. Ground 7 alleges ineffective assistance of counsel because Trial Counsel failed to object to the prosecutor's argument that petitioner "was getting a break because defendant was not charged with additional crimes." Here, Petitioner presented no persuasive evidence or facts to support his conclusory allegations in Ground 7. Further, Petitioner failed to demonstrate that Trial Counsel's performance fell below an objective standard of reasonableness. The Court finds that any choice not to object to the prosecutor's synthesis and characterization of both the victim's and Petitioner's testimony during closing arguments was a matter of trial strategy. RT 289, 5-19. Petitioner also failed to demonstrate how objecting to the prosecutor's comments would have changed the outcome of the trial.

19. Ground 8 alleges ineffective assistance of counsel because Trial Counsel failed to object to the prosecutor's argument that Petitioner "was a poor father." Here, Petitioner presented no persuasive evidence or facts to support his conclusory allegations in Ground 8. Further, Petitioner failed to demonstrate that Trial Counsel's performance fell below an objective standard of reasonableness. The Court finds that any choice not to object to the prosecutor's synthesis and characterization of the Petitioner's own testimony

during closing arguments was a matter of trial strategy. Petitioner also failed to demonstrate how objecting to the comment would have changed the outcome of the trial.

20. Ground 9 alleges ineffective assistance of counsel because Trial Counsel "did not properly argue either directed verdict motion." Here, Petitioner presented no persuasive evidence or facts to support his conclusory allegations in Ground 9. Further, Petitioner failed to demonstrate that Trial Counsel's performance was deficient and fell below an objective standard of reasonableness. The Court finds that regardless of how Petitioner's motions for directed verdict were argued, the State made a prima facie case for all charged counts to go before the jury. Petitioner also failed to demonstrate how Trial Counsel arguing the directed motions differently would have changed the outcome of the trial.

21. Ground 10 alleges ineffective assistance of counsel because Trial Counsel "declined to present any evidence of any kind at sentencing." Here, Petitioner presented no persuasive evidence or evidence to support his conclusory allegations in Ground 10. Further, Petitioner failed to demonstrate that Trial Counsel's performance was deficient and fell below an objective standard of reasonableness. The Court finds that Trial Counsel's choice not put on evidence at sentencing, or specifically, calling Petitioner's parents at witness, was a matter of trial strategy. The Court also finds that while the jury did recommend the sentences to run consecutively, the Petitioner's sentences were legal, and that the aggregate of three hundred months is well under the aggregate statutory maximum for which the Petitioner was convicted and could have been sentenced. Petitioner also failed to demonstrate how calling the parents to testify at sentencing, or putting on other evidence, would have changed the outcome of the trial or the length of Petitioner's sentence.

B. Conclusions of Law:

1. The Petitioner failed to present any persuasive or credible facts to support his allegations.

2. The Petitioner has failed to show that Trial Counsel's performance was deficient in that counsel made errors so serious that counsel was not functioning as counsel guaranteed by the 6th Amendment of the U.S. Constitution.

10

3.      The Petitioner failed to demonstrate that he suffered prejudice as a result of Trial Counsel's representation.

4.      The Petitioner failed to demonstrate that Trial Counsel's performance was deficient and fell below an objective standard of reasonableness.

5.      The Petitioner failed to demonstrate that there is a reasonable probability that, absent any errors allegedly made by Trial Counsel, a more favorable result would have occurred for the Petitioner, specifically, that the jury would have had reasonable doubt respecting the Petitioner's guilt.

6.      The Petitioner failed to show any prejudice in the proceedings which deprived him of a fair trial. Because Petitioner's Petition is without merit, and it is conclusive on its face that no relief is warranted, the Petitioner is not entitled to a hearing, and his Rule 37 Petition should be denied.

This appeal followed.[1]

## III.  *Standard of Review*

We do not reverse the denial of postconviction relief unless the circuit court's findings are clearly erroneous. *Conley v. State*, 2014 Ark. 172, 433 S.W.3d 234. A finding is clearly erroneous when, although there is evidence to support it, after reviewing the entire evidence, we are left with the definite and firm conviction that a mistake has been made. *Id.* In making a determination on a claim of ineffective assistance of counsel, this court considers the totality of the evidence. *Id.*

---

[1]We acknowledge that on August 15, 2024, appellant filed a motion to reconsider, for evidentiary hearing, and to clarify the record. Although appellant references this motion in his brief, any denial of this motion is not properly before us. On December 11, 2024, this court granted appellant's motion to file a belated appeal from the circuit court's order denying his petition for postconviction relief. Therefore, the order denying appellant's petition for postconviction relief is properly before us in this appeal.

11

Our standard of review also requires that we assess the effectiveness of counsel under the two-prong standard set forth by the Supreme Court of the United States in *Strickland v. Washington*, 466 U.S. 668 (1984). *Conley, supra.* In asserting ineffective assistance of counsel under *Strickland*, the petitioner must first demonstrate that counsel's performance was deficient. *Sartin v. State*, 2012 Ark. 155, 400 S.W.3d 694. This requires a showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the petitioner by the Sixth Amendment to the United States Constitution. *Woods v. State*, 2019 Ark. 62, 567 S.W.3d 494. In other words, the petitioner must show that his counsel's performance fell below an objective standard of reasonableness. *Mancia v. State*, 2015 Ark. 115, 459 S.W.3d 259. Additionally, counsel is allowed great leeway in making strategic and tactical decisions, particularly when deciding not to call a witness. *Johnson v. State*, 2018 Ark. 6, 534 S.W.3d 143. Matters of trial strategy and tactics, even if arguably improvident, fall within the realm of counsel's professional judgment and are not grounds for finding ineffective assistance of counsel. *Id.* A court must indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Woods, supra.* The burden is on the petitioner to overcome this presumption and to identify specific acts and omissions by counsel that could not have been the result of reasoned professional judgment. *Sims v. State*, 2015 Ark. 363, 472 S.W.3d 107. Conclusory statements that counsel was ineffective cannot be the basis for postconviction relief. *Id.*

Second, the petitioner must show that the deficient performance prejudiced the defense, which requires a demonstration that counsel's errors were so serious as to deprive

12

the petitioner of a fair trial. *Conley, supra.* This requires the petitioner to show that there is a reasonable probability that the fact-finder's decision would have been different absent counsel's errors. *Id.* A reasonable probability is a probability sufficient to undermine confidence in the outcome of the trial. *Id.*

Unless a petitioner makes both *Strickland* showings, it cannot be said that the conviction resulted from a breakdown in the adversarial process that renders the result unreliable. *Id.* We also recognize that "there is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Anderson v. State*, 2011 Ark. 488, at 3–4, 385 S.W.3d 783, 787 (quoting *Strickland*, 466 U.S. at 697).

IV. *Ineffective-Assistance-of-Counsel Claims*

In his first point on appeal, appellant argues that the circuit court "erred generally in not giving appellant relief under Arkansas Rules of Criminal Procedure 37 by holding that trial counsel for appellant was not ineffective despite the record and petition clearly showing that trial counsel was ineffective." He suggests that the merits of his petition "may not be ripe because appellant was unable to present evidence, specifically testimony from trial counsel and testimony from potential sentencing witnesses, that were necessary to develop appellant's arguments." Instead, he suggests that his petition presented a question as to trial counsel's effectiveness that should have been "explored with an evidentiary hearing," which we address in our discussion of appellant's third point on appeal. Much of appellant's argument in his first point on appeal complains that the circuit court found that trial

13

counsel's decisions constituted a matter of trial strategy. However, we note that the circuit court made other findings regarding each ground and that trial strategy was not the sole basis for the circuit court's denial. We address appellant's specific arguments for reversal regarding the denial of each ground alleged in his petition[2] as follows.

## A. Failing to Investigate Facebook Messages

In the first ground of appellant's petition, he alleged that appellant was ineffective for failing to "do an investigation into defendant's [Facebook] messages with Ms. McClain the night of the incident." More specifically, appellant alleged in his petition that his trial counsel should have investigated into the existence of the Facebook messages appellant testified transpired and Ms. McClain denied transpired at trial. Appellant alleged that if the messages could have been introduced as rebuttal evidence at trial, it would have "put all of Ms. McClain's testimony into doubt." That said, appellant readily admitted that he did not have the messages and that he did not know if any messages existed that could have been presented at trial. As quoted above, the circuit court denied appellant's first ground on the basis that appellant "presented no persuasive evidence or facts to support his conclusory allegations," appellant failed to demonstrate that counsel's "performance fell below an objective standard of reasonableness," counsel's "choice to not pursue locating messages that may or may not have existed was a matter of trial strategy," and appellant "failed to

---

[2]Although the circuit court denied the eighth ground alleged in appellant's petition, appellant has failed to specifically raise any argument for reversal regarding that ground on appeal. Therefore, any argument is considered abandoned. *Elliott v. State*, 2022 Ark. 165, 653 S.W.3d 776.

14

demonstrate how investigating the availability of messages that may or may not have existed, prior to trial, could have changed the outcome of the trial."

Counsel has a duty to make a reasonable investigation or to make a reasonable decision that makes particular investigations unnecessary; but where a petitioner under Rule 37.1 alleges ineffective assistance for failure to perform adequate investigation, he must delineate the actual prejudice that arose from the failure to investigate and demonstrate a reasonable probability that the specific materials that would have been uncovered with further investigation could have changed the trial outcome. *Reynolds v. State*, 2023 Ark. App. 106, 661 S.W.3d 259. The burden is entirely on the claimant to provide facts that affirmatively support his or her claims of prejudice; neither conclusory statements nor allegations without factual substantiation are sufficient to overcome the presumption that counsel was effective, and such statements and allegations will not warrant granting postconviction relief. *Id.*

On appeal, appellant argues that "trial counsel's lack of a pretrial investigation into Facebook Messages was professionally unreasonable and that unreasonableness prejudiced the defendant." He suggests that trial counsel failed to investigate the messages because "trial counsel did not understand how to perform an investigation" and therefore cannot be part of any trial strategy as found by the circuit court. However, as noted above, the circuit court did not deny appellant's first ground on the sole basis of trial strategy. Appellant fails to specifically address those additional findings on appeal or explain why those findings were clearly erroneous. Instead, he simply concludes his first argument on appeal by stating the

following: "Since, with the exception of appellant's ninth point, the record does not clearly show that counsel was effective then not only is appellant entitled to a hearing under Arkansas Rule of Criminal Procedure 37.3(c) but also appellant argues based upon appellant's petition, motion to reconsider and this appeal that trial counsel was ineffective." Conclusory statements in a brief on appeal are insufficient to overcome the presumption that counsel was effective. *Boston v. State*, 2023 Ark. App. 555, 681 S.W.3d 519. Further, we do not research or develop arguments for appellants. *Id.* Accordingly, we cannot say that the circuit court's denial of appellant's first ground was clearly erroneous and affirm.

## B. Failing to File Pretrial Motions

In the second and third grounds of appellant's petition, he argued that trial counsel was ineffective for failing to file pretrial motions. He alleged that trial counsel should have moved to suppress Ms. McClain's testimony regarding the over-the-counter drug test because there "was no physical evidence." He also alleged that trial counsel should have moved to suppress Mr. Chiddister's testimony that he found MV's allegations to be true because it was not relevant and "extremely prejudicial." The circuit court denied these grounds on the basis that appellant "presented no persuasive evidence or facts to support his conclusory allegations," he failed to demonstrate that counsel's "performance fell below an objective standard of reasonableness," counsel's choices were a "matter of trial strategy," and he failed to demonstrate how filing a pretrial motion would have changed the outcome of the trial.

On appeal, appellant complains that the circuit court "again indicated that not filing pre-trial motions was trial strategy without indicating why." As with appellant's first ground,

16

appellant fails to specifically address the other bases for the circuit court's denial. Conclusory statements in a brief on appeal are insufficient to overcome the presumption that counsel was effective. *Boston*, *supra*. Further, we do not research or develop arguments for appellants. *Id.* Accordingly, we cannot say that the circuit court's denial of appellant's second and third grounds was clearly erroneous and affirm.

## C. Failing to Object to Jury Instructions

In the fourth ground of appellant's petition, he argued that the jury instructions to the circuit court were inaccurate and alleged that the instruction improperly shifted the burden to him. The circuit court denied this ground on the basis that appellant "presented no persuasive evidence or facts to support his conclusory allegations," "there was nothing in the instruction given that shifted the burden" to appellant, appellant failed to proffer the jury instruction that he alleges should have been given, counsel's choices were a "matter of trial strategy," and appellant failed to state how a different jury instruction would have changed the outcome of the trial.

On appeal, appellant's entire discussion regarding this specific ground is limited to three sentences:

> Appellant's fourth point argues that trial counsel should have objected to a clearly erroneous jury instruction. The court skirts the issue of whether the jury instruction was erroneous and rather indicates that since trial counsel did not object or proffer a different instruction then trial counsel's actions amounted to trial strategy. This does not make logical sense as the record is unclear on whether trial counsel even noticed that the jury instruction was clearly erroneous.

17

Appellant's argument in his appellate brief is conclusory, and he does not cite any authority in support of his argument or otherwise develop the issue of why the circuit court's multiple bases for denying this ground were clearly erroneous. *See Sims*, 2015 Ark. 363, 472 S.W.3d 107. This court does not research or develop arguments for appellants. *Id.* Bare assertions of ineffectiveness are not enough, and conclusory statements that counsel was ineffective will not sustain a Rule 37 petition. *Id.* Accordingly, we cannot say that the circuit court's denial of appellant's fourth ground was clearly erroneous and affirm.

### D. Prosecutor's Comments During Closing Arguments

In the fifth through seventh grounds of appellant's petition, he argued that trial counsel was ineffective for failing to object to three comments made by the prosecutor during closing arguments: (1) "the prosecutor argued that defendant had the burden of producing [F]acebook messages"; (2) "the prosecutor argued about how technically [F]acebook messages work despite presenting no evidence of same"; and (3) "the prosecutor argued that defendant was getting a break because defendant was not charged with additional crimes." He further argued without any citation to authority that the prosecutor's comments led to appellant's guilty verdict because they were "geared toward inflaming the passions of the jury instead of sticking to the relevant evidence presented, switched the burden of proof upon the defendant and testified as an expert on [F]acebook messages." The circuit court denied these grounds on the basis that appellant "presented no persuasive evidence or facts to support his conclusory allegations," appellant failed to demonstrate that counsel's "performance fell below an objective standard of reasonableness," counsel's choices were a "matter of trial

strategy," and appellant failed to demonstrate how any objections would have changed the outcome of the trial.

On appeal, appellant's argument again focuses only on the circuit court's denial on the basis of trial strategy. Appellant's entire discussion regarding these three specific grounds is limited to the following three sentences:

> Appellant's five through seven points argue that prosecutorial statements during closing were clearly objectionable and that trial counsel did not object. Here Judge Taylor indicated that trial counsel's trial strategy was to object to similar questions during case in chief and then to not again object during the prosecutor's closing remarks. It does not make sense nor is it supported by the record that objecting in one place and not another to similar issues is trail strategy.

Conclusory statements in a brief on appeal are insufficient to overcome the presumption that counsel was effective. *Boston*, *supra*. Appellant does not cite any authority in support of his argument or otherwise develop the issue of why the circuit court's other bases for denying this ground were clearly erroneous. *See Sims*, 2015 Ark. 363, 472 S.W.3d 107. Further, we do not research or develop arguments for appellants. *Id.* Accordingly, we cannot say that the circuit court's denial of appellant's fifth through seventh grounds was clearly erroneous and affirm.

### E. Directed-Verdict Motions

In the ninth ground of appellant's petition, he argued that trial counsel was ineffective because he failed to "properly argue either directed verdict motion." The circuit court denied this ground on the basis that appellant "presented no persuasive evidence or facts to support his conclusory allegations," appellant failed to demonstrate that counsel's

"performance fell below an objective standard of reasonableness," and appellant failed to demonstrate how trial counsel arguing the directed-verdict motions differently would have changed the outcome of the trial.

On appeal, although appellant curiously argues that trial counsel's decisions at trial were not a matter of trial strategy, he concedes that he "could not prevail [on this ground] as the record appears clear that even if trial counsel properly argued the motion for directed verdict[,] the motion would have failed due to the prosecution making a prima facie case." Accordingly, we cannot say that the circuit court's denial of appellant's ninth ground was clearly erroneous and affirm.

### F. Failing to Call Any Witnesses During the Sentencing Phase

In the tenth ground of appellant's petition, he argued that trial counsel was ineffective for failing to call his parents as witnesses during the sentencing phase. He claimed that his parents were local and would have said "good things." He further argued without any citation to authority that the jury sentenced him "more harshly because counsel did not argue on behalf of his client or present evidence/testimony of a family member that could." The circuit court denied this ground on the basis that appellant "presented no persuasive evidence or facts to support his conclusory allegations," appellant failed to demonstrate that counsel's "performance fell below an objective standard of reasonableness," counsel's choices were a "matter of trial strategy," appellant's sentences were legal and well under the aggregate statutory maximum, and appellant failed to demonstrate how his parents' testimony would have changed the outcome of the trial or the length of his sentence

20

On appeal, appellant's argument again focuses only on the circuit court's denial on the basis of trial strategy. Appellant's entire discussion regarding this specific ground in his brief states the following:

> Appellant's tenth argument is that since trial counsel declined to present any evidence or argument at all during sentencing then that was ineffective assistance. The trial court again invoked that trial counsel's decision to not present evidence or argument that defendant should receive a lighter sentence was trial strategy. There is nothing in the record that would agree with this conclusion.

As in other grounds, appellant does not cite any authority in support of his argument or otherwise develop the issue of why the circuit court's other bases for denying this ground were clearly erroneous. *Sims*, 2015 Ark. 363, 472 S.W.3d 107. We do not research or develop arguments for appellants. *Id.*

Moreover, the decision to call a witness is generally one of trial strategy and outside the purview of Rule 37. *Whiteside v. State*, 2024 Ark. 30, 684 S.W.3d 588. The fact that there was a witness or witnesses who could have offered beneficial testimony is not, in itself, proof of counsel's ineffectiveness. *Id.* When a petitioner under Rule 37 asserts that his trial counsel was ineffective for failure to call a witness or witnesses, it is incumbent on the petitioner to name the witness, provide a summary of that witness's testimony, and establish that the testimony would have been admissible. *England v. State*, 2018 Ark. App. 137, 543 S.W.3d 553. Because appellant failed to provide a summary of the potential witnesses' testimony in his petition, the allegation was conclusory and did not merit further consideration. A conclusory claim is not a ground for postconviction relief. *Id.* The burden is entirely on the petitioner in a Rule 37 proceeding to provide facts that affirmatively

support the claims of prejudice. *Id.* Conclusory statements without factual substantiation are not sufficient to overcome the presumption that counsel was effective. *Id.* Accordingly, we cannot say that the circuit court's denial of appellant's tenth ground was clearly erroneous and affirm.

## V. *Specific Written Findings*

Appellant complains that the circuit court failed to make specific written findings when it denied his claims of ineffective assistance of counsel. Arkansas Rule of Criminal Procedure 37.3(a) states that "[i]f the petition and the files and records of the case conclusively show that the petitioner is entitled to no relief, the trial court shall make written findings to that effect, specifying any parts of the files, or records that are relied upon to sustain the court's findings." If the circuit court fails to make such findings, it is reversible error, except in cases where it can be determined from the record that the petition is wholly without merit or where the allegations in the petition are such that it is conclusive on the face of the petition that no relief is warranted. *Henington v. State*, 2012 Ark. 181, 403 S.W.3d 55.

Here, the circuit court's findings are sufficient to specify the basis for its ruling. In its order, the circuit court stated that it reviewed the pleadings and transcripts in denying appellant's petition for postconviction relief. The circuit court filed an eight-page order outlining each of appellant's ten grounds and the reasons for its denial of those grounds. Accordingly, appellant's argument lacks merit, and we affirm.

## VI. *Hearing*

Appellant finally complains that the circuit court denied his claims of ineffective assistance of counsel without holding a hearing. Arkansas Rule of Criminal Procedure 37.3 requires an evidentiary hearing in a Rule 37.1 postconviction proceeding unless the petition and the files and records of the case conclusively show that the petitioner is entitled to no relief. *Horton v. State*, 2016 Ark. 424, 504 S.W.3d 582 (per curiam); *Crawford v. State*, 2023 Ark. App. 341, 669 S.W.3d 889. If the files and the record conclusively show that the petitioner is not entitled to relief, the circuit court may simply make written findings to that effect, "specifying any parts of the files, or records that are relied upon to sustain the court's findings." Ark. R. Crim. P. 37.3(a). Conclusory allegations that are unsupported by facts do not provide a basis for either an evidentiary hearing or postconviction relief. *Henington v. State*, 2012 Ark. 181, 403 S.W.3d 55. There is no requirement that the court grant an evidentiary hearing on an allegation other than one of specific facts from which it can be concluded that the petitioner suffered some actual prejudice. *McDaniels v. State*, 2014 Ark. 181, 432 S.W.3d 644. Furthermore, the supporting facts must appear in the petition, and the petitioner cannot rely on the possibility that facts will be elicited from witnesses if a hearing is held. *Id.* Postconviction relief is not available to the petitioner who wishes to have a hearing in the hopes of finding some ground for relief. *Id.* From our review, we conclude that it is clear from the petition and the files and records of the case that appellant is entitled to no relief and that the circuit court did not err in failing to hold an evidentiary hearing.

Affirmed.

KLAPPENBACH, C.J., and BARRETT, J., agree.

*Samuel L. Hall*, for appellant.

*Tim Griffin*, Att'y Gen., by: *Kent G. Holt*, Ass't Att'y Gen., for appellee.